[No. 6,678.—Department No. 1.]

## FITZ *v.* BYNUM.

RESCISSION — OFFER TO RETURN — CONSIDERATION — FRAUD — CONFLICT OF EVIDENCE.— In an action upon two promissory notes given for stock in a mining corporation, the defense was, that the plaintiff was induced to give the notes by false and fraudulent representations of the payee as to the value of the stock and mine; and the Court instructed the jury to the effect that, if the stock was of any value, the defendant must have offered to return it, or the plaintiff would be entitled to a verdict. *Held*, that the instruction was right; and, the evidence being conflicting on this point and the question of fraud, *held*, a verdict in favor of defendant should not be disturbed.

ID.—MARKET VALUE OF STOCK—DEFINITION.—*Held further*, the sales of the stock appearing to have been only such as the operators could induce their neighbors and acquaintances to take at low and varying rates, that such transactions did not give a *market value* to the stock.

ID.—VALUE OF STOCK—EVIDENCE.—*Held further*, that the point in controversy was whether the stock had value as the mine then was, and that therefore the Court did not err in rejecting evidence as to what the ore might be made to yield by the erection of certain machinery.

APPEAL from a judgment for the defendant, and from an order denying a new trial, in the Sixth District Court, County of Yolo. DENSON, J.

The question asked the witness McCleery (referred to in the opinion) was as follows:

"Question. You have stated that it would not pay to work ore that assayed $40 to $60 per ton, because you have to pay $45 per ton for milling; now, if the company were to put a mill at the mine, say a twenty or forty-stamp mill, and proper machinery—hoisting machinery—upon the mine, could the ore not be worked for much less than $40 per ton?"

The other facts are stated in the opinions.

*J. C. Ball,* and *J. W. Armstrong,* for Appellant.

The evidence showed, without any conflict, that the stock was of value, and there was no evidence that the defendant offered to return it. Before a person can rescind a contract, he must offer to return everything of value received under the contract. (Civ. Code, § 1691; *Miller* v. *Steen,* 30 Cal. 402; *Gifford* v. *Carvill,* 29 id. 589.

The stock had a market value, and was selling at from fifty cents to a dollar a share.

The Court erred in sustaining the objection to the question put by defendant to the witness McCleery. It might be true that a mine whose ores do not contain over $60 per ton would be valueless without proper machinery, and yet with proper machinery would be worth millions.

*S. G. Harper,* for Respondent.

The main point urged by counsel on his motion for new trial was that the defendant should have tendered the stock back to Strong. The stock however, was worthless. (The counsel here cited from the testimony in support of this position.)

Myrick, J.:

The jury rendered a verdict for defendant. Plaintiff moved for a new trial, which was denied, and plaintiff appealed.

Whether the stock, the sale of which was the consideration for the notes in suit, was of value, was a matter properly submitted to the jury: as to this issue, the evidence was conflicting;

therefore the verdict of the jury will not be disturbed. The Court clearly instructed the jury that if the stock had any value, the defendant must have offered to return it, or the plaintiff would be entitled to a verdict. The verdict, therefore, was necessarily based upon the belief on their part, from the evidence, that the stock had no value. The question of *market value* of the stock does not arise in this case. It does not appear that the stock had market value as such. The sales made appear to be only such as the operators could induce their neighbors and acquaintances to take, at prices ranging from fifty cents to a dollar a share, as purchasers could be found. As the witness Strong said: "The stock that I sold, [10,000 shares] I sold for about six bits up to a dollar, ninety cents the most of it, and some at four bits, to elders and preachers. That I gave out of my own pocket to them. I told them so at the time." Such transactions do not appear to us to give *market value* to the property sold; but, rather, transactions made in order to give an *apparent* market value. The price of one dollar per share placed on the stock by the trustees was altogether arbitrary.

It was not error in the Court to sustain the objection to the question put to the witness McCleery, as to what the ore *might* have yielded under some other possible circumstances. The question in controversy was whether the stock had value as the mine then was.

Judgment and order affirmed.

SHARPSTEIN, J., and THORNTON, J., concurred.

By the COURT (in bank, on petition for rehearing):

This case was heard in Department 2 of this Court, and opinion filed August 18th, 1880. Application is made that the case be heard by the Court in bank. In addition to the facts stated in the opinion of the Department, the transcript shows that the defendant, in his answer, alleged that the payee of the note in suit induced defendant to execute the note by fraudulent and false representations as to the value of the mine and its stock, and that the representations were made for the purpose of cheating and defrauding defendant; that he represented the mine and its stock to be of great value, and that $10,000 worth of ore

was on the dump; whereas, in truth and in fact, the stock and mine were of no value. There was evidence given by the parties relating to this issue ; the evidence was conflicting ; the Court properly instructed the jury regarding it, and the verdict is conclusive. Hearing in bank denied.