[No. 13768. In Bank. — July 14, 1890.]

WENCESLAO LOAIZA, PETITIONER, *v.* SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT.

RESCISSION OF CONTRACT MADE IN THIS STATE — FRAUDULENT SALE OF PROPERTY IN MEXICO — JURISDICTION. — Where it appears that a contract was made in this state for the purchase of mining property in Mexico, for which a deed was given and possession delivered, but the purchase-money for which was paid and has been invested in this state, it appearing that the larger part of the consideration consists of notes of a citizen of this state payable therein to a resident thereof, the courts of this state have jurisdiction of an action to rescind such contract and to cancel such notes and mortgage, on the ground of fraud in the sale of the property.

ID. — EXECUTORY CONTRACTS — LAW OF PLACE. — Such notes and mortgage are executory contracts, which, if rescinded at all, may be rescinded according to the laws of the state where they were made and where they were to be executed.

ID. — OBJECT OF ACTION — CONDITION OF RESCISSION — RESTORATION OF PROPERTY IN MEXICO. — The real object of such action being to rescind the executory contracts made in this state, and to have the court use its compulsory process only to affect property within its jurisdiction, it is no objection to the granting of the relief sought that property in Mexico is to be restored and re-deeded to the defendants, in accordance with the laws of Mexico, as a condition of the equitable relief granted.

ID. — NON-RESIDENCE OF PLAINTIFFS — FOREIGN CORPORATIONS — SUBMISSION TO JURISDICTION — COMPLIANCE WITH CONDITION OF RELIEF. — The non-residence of the plaintiffs in such action, and the fact that they are foreign corporations, is no objection to the granting of the equitable relief sought, as by becoming suitors here the plaintiffs have voluntarily submitted themselves to the jurisdiction of the courts of this state, and must comply with all conditions which may be attached to the relief awarded.

Id. — NON-RESIDENCE OF PRINCIPAL DEFENDANTS — SERVICE BY PUBLICA-
TION — PROCEEDING IN REM. — The fact of the non-residence of the prin-
cipal defendants, and that no service of summons can be made upon them
in this state otherwise than by publication, cannot deprive the court of
jurisdiction over a proceeding substantially *in rem*, to adjudge, if the
proofs shall warrant it, that the consideration paid in this state for prop-
erty in Mexico was procured by fraud, and to order so much of the
money and property as remains within this state, and has been im-
pounded by the court, to be delivered up, and to cancel the securities and
executory contracts which were made and are payable in this state.

Id. — VALIDITY OF CONTRACTS — PRESUMPTION AS TO LAW OF MEXICO. —
Until the contrary is made to appear, it will be presumed that the law
of Mexico upon the subject of the validity of contracts and the rescission
of invalid contracts is the same as the law of this state.

Id. — ESSENTIALS OF VALID CONTRACT — FREE CONSENT. — To constitute a
contract, there must be parties capable of contracting, consent, a lawful
object, and a sufficient consideration; and the consent must be free, mu-
tual, and communicated by each to the other, and must not be induced
by fraud, undue influence, or mistake, else it is not free, and the con-
tract may be rescinded by the parties.

Id. — CONSENT PROCURED BY FRAUD — MISREPRESENTATIONS OF VALUE OF
LAND PURCHASED. — When the consent of purchasers to make a pur-
chase of land, and to deliver moneys and securities in consideration
thereof, is procured by fraudulent misrepresentations as to the value of
the land, knowingly made by the vendor, and would not have been given
but for such fraud, there is no valid and binding contract between the
parties, and it may be rescinded by the defrauded party.

Id. — ELECTION OF REMEDY BY PURCHASER — DAMAGES — RESCISSION —
JURISDICTION. — In such case, the purchaser may elect either to rescind
the contract, or to ratify it and sue for damages, though he cannot ob-
tain a valid judgment for damages without personal service or appearance
of the defendants; but if he elects to rescind, he may, upon and after
rescission, sue an absent defendant to enforce the rescission, so far as
the means of enforcing it are within the jurisdiction of the court.

Id. — CONSENT TO RESCISSION. — It does not require the mutual consent of
the parties to rescind a contract for fraud or mistake; but either party
may rescind when consent was given by mistake or obtained by fraud.

Id. — COMPLETION OF RESCISSION — OFFER OF RESTITUTION BY PURCHASER
— NOTICE OF RESCISSION. — An offer by a purchaser, whose purchase
was induced by fraud of the vendor, to restore everything of value re-
ceived under the contract of purchase, whether such offer is accepted or
not, accompanied by a prompt and proper notice of the rescission, makes
the rescission complete.

Id. — ENFORCEMENT OF RESCISSION BY PURCHASER — SECURING RESULTS
AGAINST NON-RESIDENT VENDORS. — After the rescission has been com-
pleted, the purchaser may seek the aid of a court of competent jurisdic-
tion, notwithstanding non-residence of the vendors, to secure the results
and fruits of the rescission, in the restoration of moneys and things of
value given in consideration of the purchase, in so far as they are ear-

marked, so that they can be traced and identified, and are within the jurisdiction and possession of the court whose aid is soug t.

ID. — APPOINTMENT OF RECEIVER — JURISDICTION. — The superior court, having general jurisdiction to enforce such a rescission, has jurisdiction to appoint a receiver of the moneys and securities in this state which the purchaser claims should be restored. Such appointment does not affect the title to the property involved, but simply preserves it, and keeps it within the jurisdiction of the court, until the rights of the parties can be determined.

CERTIORARI — REVIEW OF APPOINTMENT OF RECEIVER. — Where the superior court has jurisdiction to appoint a receiver, error in the exercise of that jurisdiction can only be reviewed on appeal, and not by *certiorari.*

WRIT of review from the Supreme Court to the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Page & Eells, P. G. Galpin, Wilson & Wilson, E. W. McKinstry,* and *Stanly, Stoney & Hayes,* for petitioner.

There can be no jurisdiction of a personal action without personal service of process upon the party defendant within the territorial limits of the state. (*Hart* v. *Sansom,* 110 U. S. 151; *Pennoyer* v. *Neff,* 95 U. S. 722; *Cookney* v. *Anderson,* 1 De Gex, J. & S. 380; *Dearing* v. *Bank of Charleston,* 5 Ga. 497; *Adams* v. *Lamar,* 5 Ga. 87; *Boswell* v. *Otis,* 9 How. 336; *Bischoff* v. *Wethered,* 9 Wall. 812; *Picquet* v. *Swan,* 5 Mason, 35; *Knowles* v. *Gaslight Co.,* 19 Wall. 58; *Galpin* v. *Page,* 18 Wall. 369; *Belcher* v. *Chambers,* 53 Cal. 635; *Mudge* v. *Steinhart,* 78 Cal. 34 *Anderson* v. *Goff,* 72 Cal. 65; *Spurr* v. *Scoville,* 57 Mass. 579; *Harding* v. *Alden,* 9 Me. 140; 23 Am. Dec. 549; *Todd* v. *Kerr,* 42 Barb. 317; *Mansfield* v. *McIntyre,* 10 Ohio, 29; *McEwen* v. *Zimmer,* 38 Mich. 765; 31 Am. Rep. 332; *Bates* v. *Chicago etc. R'y Co.,* 19 Iowa, 261; *Scott* v. *Noble,* 72 Pa. St. 115; 13 Am. Rep. 663; *Lutz* v. *Kelly,* 47 Iowa, 307; *Buchanan* v. *Rucker,* 9 East, 194; *Ely's Appeal,* 70 Pa. St. 311.) Equity jurisdiction is *in personam,* and not *in rem,* and can only be entertained where necessary parties defendant are within the jurisdiction. (*Hart* v. *Sansom,* 110 U. S. 154; *Anderson* v. *Goff,* 72

Cal. 73; *Mitchell* v. *Bunch*, 2 Paige, 606; 22 Am. Dec.
669; *Spurr* v. *Scoville*, 57 Mass. 579; *Shields* v. *Bar-
row*, 17 How. 136; *Barney* v. *Baltimore City*, 6 Wall. 284;
*Ribon* v. *R. R. Co.*, 16 Wall. 450; *Adams* v. *Lamar*, 5 Ga.
92; *Clark* v. *Hammett*, 27 Fed. Rep. 339; *Gay* v. *Eaton*, 27
La. Ann. 166; *Mallon* v. *Hinde*, 12 Wheat. 193; *Watkins*
v. *Holman*, 16 Pet. 57; Story Eq. Pl., sec. 81; *Mead* v.
*Merritt*, 2 Paige, 402; *Northern Indiana R. R. Co.* v.
*Michigan Central R. R. Co.*, 15 How. 242; *Boswell's
Lessee* v. *Otis*, 9 How. 348; *Picquet* v. *Swan*, 5 Ma-
son, 35; Story on Conflict of Laws, secs. 548 et seq.;
Story's Eq. Pl., sec. 489; Story's Eq. Jur., sec. 744 a;
Wheaton on International Law, secs. 111, 140; *Cooley*
v. *Scarlett*, 38 Ill. 318; 87 Am. Dec. 298; *Brine* v. *Ins. Co.*,
96 U. S. 635; *Watts* v. *Waddle*, 6 Pet. 401; *Freeman* v.
*Alderson*, 119 U. S. 188; *Foley* v. *Maillardet*, 1 De Gex, J.
& S. 390; *W. U. Tel. Co.* v. *P. & A. Co.*, 49 Ill. 92; *Penn.* v.
*Hayward*, 14 Ohio St. 302; *Morris* v. *Remington*, 1 Pars.
Cas. 387; *Wood* v. *Warner*, 15 N. J. Eq. 81; *Waterhouse* v.
*Stamfield*, 9 Hare, 233; *Livingston* v. *Jefferson*, 1 Brock. 208;
Waterman on Specific Performance, secs. 48, 49, p. 64;
Il ard v. *Arredondo*, 1 Hopk. Ch. 213.)   A bill to rescind
a contract is a proceeding *in personam*. (*Shields* v. *Bar-
row*, 17 How. 136.)   Rescission must be complete and
total as to all the parties, and cannot be partial. (*Bohall*
v. *Diller*, 41 Cal. 533; *Purdy* v. *Bullard*, 41 Cal. 448; 1
Wharton on Contracts, sec. 291; *Cromwell* v. *Wilkinson*,
18 Ind. 365; *Alcorn* v. *Harmonson*, 2 Blackf. 235; *Miller*
v. *Steen*, 30 Cal. 407; 89 Am. Dec. 124; *Pearsol* v.
*Chapin*, 44 Pa. St. 17.)   An action to reach property
by a proceeding *quasi in rem* can only be entertained
as expressly authorized by statute. (*Mudge* v. *Steinhart*,
78 Cal. 34; *Felch* v. *Hooper*, 119 Mass. 52; *Hart* v. *San-
som*, 110 U. S. 155; *Boswell's Lessee* v. *Otis*, 9 How. 348;
Cooley on Constitutional Limitations, 404; *Coleman's
Appeal*, 75 Pa. St. 441; Wells's Jurisdiction of Courts,
78, 79.)   Courts have no jurisdiction beyond their own

sovereignty. (*Bimelar* v. *Dawson,* 4 Scam. 542; 39 Am. Dec. 430; *Pennoyer* v. *Neff,* 95 U. S. 727; *Belcher* v. *Chambers,* 53 Cal. 635; *Peabody* v. *Hamilton,* 106 Mass. 220; *Ewer* v. *Coffin,* 1 Cush. 23; 48 Am. Dec. 587; *Lovejoy* v. *Albee,* 33 Me. 414; 54 Am. Dec. 634.) The decree of this court is impotent to affect the title to lands in Mexico. (*Cooley* v. *Scarlett,* 38 Ill. 316; 87 Am. Dec. 298; *Matthaei* v. *Galitzen,* L. R. 18 Eq. 340; *Blake* v. *Blake,* 18 Week. Rep. 944; *Norris* v. *Chambers,* 29 Beav. 246; *Cookney* v. *Anderson,* 31 Beav. 452; *Mosby* v. *Burrow,* 52 Tex. 396; *White* v. *White,* 7 Gill & J. 210; *Page* v. *McKee,* 3 Bush, 135; 96 Am. Dec. 201; *Watts* v. *Wadleigh,* 6 Pet. 400; *Paschal* v. *Acklin,* 27 Tex. 173; Wharton on Conflict of Laws, secs. 278, 288, 808; Story on Conflict of Laws, secs. 414, 551; Story's Eq. Jur., sec. 744 a; Beach on Receivers, p. 19, sec. 18; *Davis* v. *Headly,* 22 N. J. Eq. 115; *Brine* v. *Ins. Co.* 96 U. S. 635; *Lindley* v. *O'Reilly,* 15 Atl. Rep. 380; *Morris* v. *Remington,* 1 Pars. Cas. 387.) Non-residents of a state cannot therein sue non-resident foreigners in regard to contracts made without the state. (*Smith* v. *Mutual Ins. Co.,* 14 Allen, 336; *Williston* v. *Michigan Southern R. R. Co.,* 13 Allen, 400; *Matthaei* v. *Galitzen,* L. R. 18 Eq. 340.) Unless jurisdiction can be had against the non-resident, the court cannot proceed against a mere stake-holder in the state. (*Matthaei* v. *Galitzen,* L. R. 18 Eq. 340; *Williston* v. *Michigan etc. R. R. Co.,* 13 Allen, 400; *Cookney* v. *Anderson,* 1 De Gex, J. & S. 365; *Foley* v. *Maillardet,* 1 De Gex, J. & S. 390; *Norris* v. *Chambers,* 29 Beav. 246; *Molony* v. *Dows,* 8 Abb. Pr. 316.) The court had no jurisdiction to appoint a receiver, as it has no power to render a final decree in the action, and no jurisdiction merely to appoint a receiver is conferred by statute. (Beach on Receivers, 2, 5, 10, 12, 52; *French Bank Case,* 53 Cal. 553; *Fellow* v. *Herman,* 13 Abb. Pr., N. S., 1; *Gay* v. *Eaton,* 27 La. Ann. 166.) The choses in action of the Aguayos must be regarded as following their domicile in Mexico. (*Booth* v. *Clark,* 17 How. 330;

*McKean* v. *County of Northampton*, 49 Pa. St. 519; *Whitsell* v. *County of Northampton*, 49 Pa. St. 526.) The jurisdiction of the court cannot be extended by a receiver. (Beach on Receivers, 5, 52, 54; *Booth* v. *Clark*, 17 How. 322; *Mosby* v. *Burrow*, 52 Tex. 403; Edwards on Receivers, 3; *Shaw* v. *Short*, 5 L. J., N. S., 79.)

*William F. Herrin*, for Respondent.

A non-resident plaintiff suing in equity submits to the jurisdiction of the court, and may be compelled to comply with conditions of equitable relief. (*Cleveland* v. *Burrill*, 25 Barb. 532.) A proceeding against property is substantially *in rem*, and may be either by attachment or bill in chancery, and the service may be by publication in either case, though the defendant is not bound beyond the property in question. (*Boswell's Lessee* v. *Otis*, 9 How. 348; *Cooper* v. *Reynolds*, 10 Wall. 318; *Galpin* v. *Page*, 3 Saw. 124, 125; *Pennoyer* v. *Neff*, 95 U. S. 727; *Windsor* v. *McVeigh*, 93 U. S. 279; *Heidritter* v. *Elizabeth Oil Co.*, 112 U. S. 301, 302; *Martin* v. *Pond*, 30 Fed. Rep. 15; *Palmer* v. *McCormick*, 28 Fed. Rep. 541; *Felch* v. *Hooper*, 119 Mass. 52; *Quarl* v. *Abbett*, 102 Ind. 233.) This suit is to enforce a trust *ex maleficio*, concerning specific property within the jurisdiction of the court. (Civ. Code, sec. 2224; Pomeroy's Eq. Jur., sec. 1053; *Felch* v. *Hooper*, 119 Mass. 52.) Specific performance and rescission are governed by the same principles, and the court may render an effectual decree where either the parties or the subject-matter, or so much thereof as is sufficient to enable the court to enforce its decree, is within the jurisdiction of the court. (*Rourke* v. *McLaughlin*, 38 Cal. 196; *Felch* v. *Hooper*, 119 Mass. 58; *Ward* v. *Arredondo*, 1 Hopk. Ch. 213; 14 Am. Dec. 543; *Matteson* v. *Scofield*, 27 Wis. 671.) A contract, though made without the state, between non-residents, may be set aside, if it affects property in the state. (*Quarl* v. *Abbett*, 102 Ind. 233; 52 Am. Rep. 662.) A

defendant served with summons by publication must be deemed before the court for all purposes, except the rendition of a personal judgment. (*King* v. *Vance*, 46 Ind. 251; *Martin* v. *Pond*, 30 Fed. Rep. 15.) A court of equity may compel a reconveyance of lands situated abroad, according to the *lex loci rei sitæ*. (*Cleveland* v. *Burrill*, 25 Barb. 552; *Mitchell* v. *Bunch*, 2 Paige, 606; 22 Am. Dec. 669; *Sutphen* v. *Fowler*, 9 Paige, 280; *Masire* v. *Watts*, 6 Cranch, 148, 158; *De Klyn* v. *Watkins*, 3 Sand. Ch. 185; *Mead* v. *Merritt*, 2 Paige, 402; *Pingree* v. *Coffin*, 12 Mass. 304, 305.) The law of Mexico must be presumed to be the same as the law of California, until the contrary is made to appear. (Wharton on Conflict of Laws, sec. 779; *Hill* v. *Grigsby*, 35 Cal. 656; *Marsters* v. *Lash*, 61 Cal. 622; *Shumway* v. *Leakey*, 67 Cal. 460; *Lux* v. *Haggin*, 69 Cal. 380, 381; *Norris* v. *Harris*, 15 Cal. 226, 253–255; *Hickman* v. *Alpaugh*, 21 Cal. 226.) A receiver may be appointed against a non-resident defendant before answer. (*Malcolm* v. *Montgomery*, 2 Molloy, 500.) A receiver will be appointed where the possession of property has been obtained by fraud. (High on Receivers, sec. 565; Beach on Receivers, sec. 483; *Huguenin* v. *Baseley*, 13 Ves. Jr. 105; *Stilwell* v. *Wilkins*, Jacob, 280; *Mitchell* v. *Barnes*, 29 Hun, 195.) A court of equity may appoint a receiver, and order an agent of a defendant to deliver specific property in controversy to the receiver. (*Ex parte Cohen*, 5 Cal. 496.) A receiver may be appointed without notice when irreparable injury would result from delay, or the defendant is out of the jurisdiction. (*People* v. *Norton*, 1 Paige, 17; *Verplanck* v. *Mercantile Ins. Co.*, 2 Paige, 450.)

*R. S. Mesick*, also, for Respondent.

So far as concerns rescission, the vendees had already accomplished it before suit. (Civ. Code, secs. 1689, 1691.) They are entitled to restitution under the rescinded contract. (Civ. Code, sec. 712.) Their prop-

erty is held by defendants as involuntary trustees. (Civ. Code, secs. 2217–2243.) The getting back of what plaintiffs gave under the rescinded contract involves the right to the aid of equity and the appointment of a receiver. (*Duff* v. *Duff*, 71 Cal. 533, 534; *Ex parte Cohen*, 5 Cal. 496; Code Civ. Proc., sec. 564, subd. 6.) A receiver is more readily appointed by a court of equity to take possession of personal property than to interfere with the possession of real estate, for the reason that the one is movable and may be lost, while the other is immovable. (High on Receivers, 2d ed., sec. 554 ) Receivers have often been appointed, not only because the property in question was in danger of being lost, but because a trustee was out of the jurisdiction of the court, as was done in *Noad* v. *Blackhouse*, 2 Younge & C. 529. (*Smith* v. *Smith*, 10 Hare, appendix, p. 71; *Malcolm* v. *Montgomery*, 2 Molloy, 500. See High on Receivers, 2d ed., secs. 40, 41.) In equity, seizure by a receiver is the equivalent of seizure by writ of replevin or by attachment. (*McLane* v. *Placerville R. R. Co.*, 66 Cal. 616.) Jurisdiction exists in the place where the property is found. (Woolsey on International Law, sec. 71, p. 115.) Property may be bound by a decree in equity without actual service of process. (*Heidritter* v. *Elizabeth Oil Cloth Co.*, 112 U. S. 300–302.)

Fox, J.— This is a proceeding for a writ of review to set aside certain proceedings in the superior court of the city and county of San Francisco, Levy, J., in an action there pending, wherein the Oro Grande Company, Limited, and the Globe Mining Syndicate, Limited, are plaintiffs, and Manuel Aguayo, Leocadio Aguayo, and W. Loaiza, are defendants, and in which action such proceedings have been had as that orders for injunction *pendente lite*, and appointing a receiver, have been made, the plaintiff here claiming that in that case the court had no jurisdiction for such proceeding, and praying that the orders aforesaid be vacated and set aside.

In the action whereof the proceedings are sought here to be reviewed, both the plaintiffs are foreign corporations organized under the laws of and resident in England, and the defendants Manuel and Leocadio Aguayo are both citizens and residents of the republic of Mexico, absent from this state, the defendant Loaiza (plaintiff herein) being the only one of all the parties residing in this state, and the complaint showing upon its face that he is a simple stake-holder in the premises. The relief sought is in favor of artificial persons resident in England, and against natural persons citizens and resident in Mexico. As between such parties, it being conceded that personal service of process has not been made upon any of the defendants except Loaiza, and that he is a mere stake-holder, it is claimed that the courts of this state have not and can have no jurisdiction. And the whole question to be resolved in this proceeding is that one of jurisdiction. If the court has jurisdiction, then the errors, if any, which have been or may be committed are reviewable only on appeal.

Looking into the record, which has been sent up on return to the writ issued herein, the following facts, briefly stated, appear,—it being understood that no answer has been made to the complaint filed in the court below, and that for the purposes of this proceeding the allegations of the complaint, affidavits, and deposition filed are necessarily taken as true:—

In 1887–89 the defendants Manuel and Leocadio Aguayo, brothers, were partners, owners, and in possession of certain mining properties and other adjuncts thereto situate in the state of Sonora, in Mexico, and bonded the same for sale; that during this period of time, and with a view to effecting sale thereof, certain mining experts were called upon to make, and did make, an extensive and critical examination of the mines and mining property, as a basis for and upon the basis of which they made reports as to the character and value

of the properties; that they were engaged for several weeks in taking samples of earth, rock, and ores from the mines, and making assays thereof; that during all the time they were engaged in taking such samples, the Aguayos, for the purpose of insuring high-grade returns from the assays, and thus securing a sale of the mines at a price largely in excess of their true value, persistently, willfully, secretly, and fraudulently, and without the knowledge of the experts, tampered with the samples taken, and mixed with them large quantities of fine gold, — or in the language of the miners, "salted the samples," or caused the same to be done, — so that they fraudulently procured grossly exaggerated reports to be made as to the character and value of the mines, and that, too, without the knowledge of the experts who conducted the examinations and made the reports; that, deceived and misled by the false and fraudulent reports so fraudulently procured and caused to be made, and relying upon the truth thereof, the plaintiffs (the corporations above named), in September, 1889, were induced to purchase, and did purchase, said mines and properties from said Aguayos, at and for the price of one million five hundred and seventy-five thousand dollars, depositing therefor in escrow, in San Francisco, seven hundred and ten thousand dollars, in gold coin, and the promissory notes of Alvinza Hayward, a citizen of California, payable at future days, with interest at six per cent per annum, and secured by mortgage upon real estate situate in San Francisco, to the amount of eight hundred and sixty-five thousand dollars, all of which was subsequently delivered, in pursuance of the conditions of the deposit, and upon receipt of information that possession of the mining properties had been delivered, to the defendant Loaiza, who received the same as the agent and representative of the defendants Aguayos; that these notes and mortgages, and nearly all the money, or its immediate representative in securities in which the same had

been invested by Loaiza for account of the Aguayos, remained in the hands of said Loaiza, held for the benefit and account of the Aguayos, and within the jurisdiction of the courts of California, until the commencement of this suit in the superior court, when the transfer thereof pending suit, or the removal of the same beyond the jurisdiction of the court, was enjoined by order of the court, and a receiver was appointed to take possession thereof, and hold the same until the further order of the court. The plaintiffs in said suit, purchasers of the mining properties, did not discover the fraud which had been perpetrated upon them until within one month prior to the bringing of the suit. Promptly upon discovering these frauds, they notified the Aguayos in writing that they " did rescind said purchase and sale," and demanded of said Aguayos " a recission of the said purchase and sale," and then offered to restore to said Aguayos all the properties which had been conveyed to them, and everything of value which they had received from them, and to surrender the possession of all said properties, and to do and perform all acts and things which might be necessary or proper in order to fully restore to said Aguayos all properties and things of value received from them, as fully and completely as if said purchase and sale had never been made, upon condition that said Aguayos should restore the moneys and things of value received as the consideration for said purchase and sale.

This demand and offer being rejected, a bill in equity was promptly filed, setting out the facts, renewing the offer, and praying a decree of rescission and of restoration of the moneys and things of value received by defendants from plaintiff as the consideration for such purchase and sale, an injunction, pending the action, to restrain the transfer of said moneys and securities, or the removal thereof beyond the jurisdiction of the court, and the appointment of a receiver, pending the

action, to take charge of and hold said moneys and securities.

1. It is claimed in argument that this contract was made in Mexico, and can only be rescinded in and according to the laws of Mexico, and that no court has jurisdiction to adjudge a rescission thereof except the courts of Mexico.

There is no more in the record to indicate that this contract was made in Mexico than there is that it was made in England, except that the mere act of delivering possession of the property sold was of necessity done in Mexico. The internal evidences furnished by the record all tend to show that the entire contract of purchase and sale was made in San Francisco. There the deposit in escrow was made of everything that was to be given in consideration of the purchase and sale pending actual delivery of possession. There the consideration was finally delivered to and received by the agent of the Aguayos, and there the consideration remained, invested and seeking investment, until impounded by the court at the suit of the parties defrauded into its delivery. The larger part of that consideration consisted of the promissory notes of a citizen of California, made and payable in California, and to a resident of the state (for all the notes were payable to the defendant Loaiza), and secured by mortgage of property in said state, made and executed by the maker of the notes, and recorded in said state. These were certainly executory contracts; and if they could be rescinded at all, it could be done in and according to the laws of the state where made, and where they were to be executed.

2. It is also insisted that the court in which said proceeding in equity was instituted has no jurisdiction, because the aid of the courts of this state cannot be successfully invoked in favor of non-resident foreign corporations, against non-resident foreigners, in an action affecting in any way title to lands in a foreign state.

The unsoundness of this position grows out of the assumption that the object of the action is to compel the Aguayos to accept reconveyance and restoration of the properties in Mexico. Such is not the fact. The real object of the action is to compel the restoration to plaintiffs of so much of the consideration which they were fraudulently induced to give for these properties as may be within the reach of the compulsory power of the court, and for the rescission and cancellation of the executory contracts (the notes and mortgages) procured by the frauds aforesaid, they being confessedly within the jurisdiction of the court. This relief can only be given in equity, and will be given only upon the condition prescribed by the statute and offered by the plaintiffs,— that of restoration by the plaintiffs of the property for which the consideration was given. As to the lands, the plaintiffs are to be the actors; the defendants are to be given the opportunity to receive. The plaintiffs have voluntarily submitted themselves to the court, offering to do equity,—entitled to relief only as they do equity, and bound to obey the mandate of the court as a condition of receiving the relief which they seek. The non-residence of plaintiffs is not material to the maintenance of the action. They have submitted themselves to the jurisdiction of the court by becoming suitors before it. They are amenable to its process, and must obey its commands before they can obtain relief. If conditions are attached to the relief awarded them, then performance by them can be compelled. (*Cleveland* v. *Burrill*, 25 Barb. 532.)

Such voluntary appearance and submission made through the officers of the court — the attorneys at law — would be sufficient to enable the court to enforce the performance of an act imposed as a condition of relief; but in this case the plaintiffs are not here by simple representation by counsel. The record shows that they seek the equitable interposition of the court, and in court

make the offer of restoration on their part required by our statute, in person, through the person of one of their own directors resident within the jurisdiction, and by them made managing director, and their attorney in fact. Through him they not only make the offer, but through him they give all the securities that the court requires — and they are proportionate to the interests involved — for the protection of the defendants.

This point, like the next one which will be noticed, is argued as if the object of the action was to compel a reconveyance of the lands in Mexico, and it is only by supposing that such is the object of the action that the cases cited in support of the argument can be held to be in point. But such is not the object of the action. If the parties were reversed, and the Aguayos were suing the English companies for reconveyance and redelivery of possession, on the ground of frauds committed by the English companies, resulting in a failure of consideration, then some of the authorites cited would support the proposition that the court here would have no jurisdiction to enforce its decree for a reconveyance and redelivery of property in Mexico, unless it first got jurisdiction over the persons of the defendants. The object of this action is to have the court use its *compulsory process only* to affect property within its jurisdiction, and then only upon the party seeking the aid of this process, voluntarily, or in compliance with conditions which the court may impose, personally, and in accordance with the laws of Mexico, doing whatever may be necessary to restore title and possession of the property there situate.

Counsel have cited numerous authorities in support of their argument in this behalf. We refer to a few of those upon which most reliance seems to be placed, by way of showing the distinction between the cases cited and the one here under consideration, and the reason why the rule there established does not apply to the present case.

*Smith* v. *Mutual Ins. Co.*, 14 Allen, 336, was an action

brought in Massachusetts by a citizen and resident of Alabama against a life insurance company of New York to compel the latter to restore to him certain rights under a policy of insurance upon his life, which the company claimed had been forfeited. This was an action *in personam*, pure and simple. There was neither person nor property in Massachusetts to be affected by the judgment. All the relief sought was to compel action of a certain kind on the part of a non-resident foreigner, and in a foreign country. The court properly held that it had no power to enforce such a judgment, and consequently no jurisdiction to render one. The case bears no relation to the one here under consideration.

Great stress is laid upon *Matthaei* v. *Galitzen*, L. R. 18 Eq. 340, in this connection. That case was brought by the plaintiff, a foreigner, against the Princess Galitzen, also a foreigner, for an accounting of profits made in the working of a mine in Russia, the mine being operated by an English company, which was a mere stake-holder in the premises, and made a defendant solely for the purpose of preventing the payment of the profits over to the princess until the accounting was had,—the plaintiff claiming that he was entitled to share in the profits by way of commission. The action was purely *in personam*, whether it involved the matter of accounting between plaintiff and the princess, or included the settlement, as preliminary thereto, of the question of whether or not the plaintiff was entitled to a commission as claimed. The contract relied upon was confessedly made in a foreign country, in relation to foreign property, between parties both of whom were foreigners, and all rights and liabilities under it were personal. We fail to perceive how the case has any bearing upon the questions involved in this case. The conclusion of the court was, that "a foreign resident abroad cannot bring another foreigner into this court respecting property with which this court has nothing to do." That is not this case. Here the

parties are brought into court to cancel a contract made and to be executed in this jurisdiction,—the notes and mortgage,—and in relation to property which is subject to the jurisdiction of the court. It is not proposed that the judgment of the court shall make the defendants *actors* in the disposition of property beyond its jurisdiction, or appoint anybody to act for them in the disposition of such property.

We are cited, also, to an opinion by an able jurist, Mr. Justice Sharswood, in *Coleman's Appeal,* 75 Pa. St. 442. We have carefully examined that case, and as we read it, only these points are decided, having any bearing upon the questions here involved: 1. That what is called a foreign attachment in that state will not lie for a demand founded in tort; that was a matter purely of statutory regulation, as it is here.  2. That in cases where attachment will lie against a non-resident foreign defendant, the judgment can only be enforced against the property of defendant found within the jurisdiction, unless the defendant has been personally served within the jurisdiction, or has voluntarily appeared; but upon such service or appearance, the proceeding against him may end in a judgment which will bind him personally, and may follow and be enforced against him extraterritorially. 3. "Where the claim of plaintiff is for goods or land [within the jurisdiction] in the constructive possession of a non-resident, by his agents or tenants, he has his remedy by writ of ejectment for the land, or by writ of replevin for the goods, in like manner summoning the person in possession as defendant."  4. In equity, "in cases where persons interested are out of the jurisdiction of the court, it is sufficient to state the fact in the bill, and pray that process may issue on their return . . . . . The power of the court to proceed to a decree in their absence will depend on the nature of their interest and the mode in which it will be affected by the decree. . . . . If they are to be *active* in performing the

decree, or if they have rights wholly distinct from those of the other parties, the court, in their absence, cannot proceed to a determination against them." 5. That "though it is an undoubted principle that wherever a court of equity has jurisdiction it will go on to make a complete decree, so as to settle the entire controversy between the parties, .... any subject of property within its reach will [not] give it jurisdiction of the person of a non-resident defendant, so as to authorize .... a personal decree against him, if he does not appear, for the payment of money." And after some further consideration, it concludes that branch of the discussion with the words: "We are of opinion that the bill must be confined, at least so far as the interest of the foreign defendant is concerned, to a prayer for a decree affecting only the property in question."

There is nothing in these conclusions, or in the reasoning of the learned justice which leads up to them, tending to show that the court whose action is now under consideration has not jurisdiction to proceed in the action before it, and grant the relief prayed, so far at least as it affects the property within this jurisdiction. As to that property, the defendants will not be called upon to be active in enforcing or carrying into effect the judgment of the court. It may be that no personal judgment can be entered against them on account of moneys which they have secured which could be enforced against them in the country of their residence; but it can be adjudged, if the proofs shall warrant it, that the consideration paid for the property in Mexico was procured to be paid by fraud, and so much of the money and property as remains within this jurisdiction and has been impounded by the court can be delivered up, and the securities and executory contracts requiring further payment to be made be canceled, without any conflict with the principles laid down in the case cited.

We are also cited to *Norris* v. *Chambers*, 29 Beav. 246,

and *Cockney* v. *Anderson*, 31 Beav. 452. Neither of these cases are in point. In the former, the English court sustained a demurrer on two grounds: 1. That there was no privity of contract between the parties plaintiff and defendant; 2. That the purpose of the bill was to decree a lien upon real property situate in Germany. In the other, the reason for holding that there was no jurisdiction was because the purpose of the action was to administer and wind up a trust created under a contract made in a foreign country, by foreigners, to be executed wholly in that country, and in relation to property there situate. Neither of the cases are at all parallel to the one here under consideration.

Nor is the case of *Mosby* v. *Barrow*, 52 Tex. 396, in point. No decree is sought in this case compelling the defendants to make conveyance of lands in Mexico. If any conveyance of that land is required, it will be required of plaintiffs, who have submitted themselves to the jurisdiction of the court, and as a condition of granting the relief which they seek.

3. Dropping the element of non-residence of plaintiffs, the petitioner here still insists, and the argument, even under other heads, is mainly directed to this proposition, that the court has no jurisdiction, by reason of the non-residence of the defendants Aguayos, and of the fact that personal service has not been, and cannot be, made on them within the state.

The cases already considered are leading ones among those urged in support of this proposition. Added to them are many others, such as *Belcher* v. *Chambers*, 53 Cal. 635, *Anderson* v. *Goff*, 72 Cal. 73, *Pennoyer* v. *Neff*, 95 U. S. 714, and others of that class, all of which discuss the question of the power of the court to render judgment in actions purely *in personam*, without personal service or appearance of the defendant; or others, like *Hart* v. *Sansom*, 110 U. S. 155, where the decree was to operate against the defendant. *proprio vigore* to annul a

deed or establish a title, or to compel the defendant personally to be an actor in the performance of some act prescribed by the decree, whether he desired to perform it or not. It is conceded that the court would have no power to render a decree in such cases and of such a character in the absence of the defendant, unless there had been personal service of process within the jurisdiction to which the court could send its process.

But all this argument is based upon a misapprehension of the character and object of the action here under consideration, and of the relation of the parties to each other at the time of the commencement of the action.

To a correct understanding of the object of the action, and of the question of the right to maintain it, we must first correctly understand the relation of the parties to each other.

The record does not bear out the proposition insisted upon on behalf of the petitioner here,— that they are simply persons who were parties to an *executed* contract which was made and executed in Mexico. The preponderance of the evidence furnished by the record is in favor of the proposition that the contract of purchase and sale was made in San Francisco, within the jurisdiction of the courts of California. One act in its performance was necessarily performed in Mexico,—that of the delivery of the property sold. But that was not the last act in the performance of that contract. The entire consideration of the sale was subsequently delivered, and that delivery took place in San Francisco. It consisted in the delivery of money, and of new contracts,— executory contracts,—to be performed in the future, which have not yet been performed, and performance of which is not yet due. These have always been, and still are, within the jurisdiction of our courts. These moneys and executory contracts were delivered in consideration of what is claimed to have been a contract of sale on the part of the Aguayos, now fully executed. But was that

a contract at all? In this state, and until the contrary appears it will be presumed to be the same in Mexico, it is essential to the validity of a contract that there should be,—1. Parties capable of contracting; 2. Consent; 3. A lawful object; and 4. A sufficient cause of consideration. (Civ. Code, sec. 1550.) To be consent, it must be free, mutual, and communicated by each to the other. (Civ. Code, sec. 1565 ) It is not free when obtained through fraud, undue influence, or mistake. (Civ. Code, sec. 1567.) If not free, it may be rescinded *by the parties* in the manner prescribed by the chapter on rescission. (Civ. Code, sec. 1566.) Consent is deemed to have been obtained by fraud, undue influence, or mistake when it would not have been given had such cause not existed. (Civ. Code, sec. 1568.)

The record shows that the consent of the purchasers to make this purchase, and deliver these moneys and securities in consideration thereof, was procured by fraud on the part of the Aguayos, and mistake on the part of the other parties, induced by such fraud, and that it would not have been given had not such cause existed. It therefore shows that there was no valid and binding contract between the parties, and that, such as it was, it might be rescinded by the parties. The acts of fraud are set out, and they show actual fraud, within the meaning of section 1571 of the Civil Code. It was a misrepresentation of the value of property knowingly made, and entitled the purchaser to a rescission. (*Cruess v. Fessler*, 39 Cal. 336; *Bank of Woodland* v. *Hiatt*, 58 Cal. 234.) Having been induced to enter into this contract by fraud, and through mistake induced by such fraud, the parties could either ratify the same and sue for damages, or rescind. (1 Wharton on Contracts, sec. 282; 2 Addison on Contracts, sec. 1218; *Alvarez* v. *Brannan*, 7 Cal. 503; 68 Am. Dec. 274; *Pence* v. *Langdon*, 99 U. S. 578; Civ. Code, sec. 1689; *Burke* v. *Levy*, 70 Cal. 254; *Fish* v. *Benson*, 71 Cal. 440; *Colton* v. *Stanford*, 82

Cal. 398.) If the suit were for damages, it could not succeed and end in a judgment which could be enforced against the persons of defendants without personal service or appearance. But it is not for damages. It is *upon* and *after* rescission, and to enforce rescission, so far as the means of enforcing it are within the jurisdiction of the court. It does not require mutual consent of the parties to rescind. Under section 1689, either party may rescind when consent was given by mistake or obtained by fraud. According to the record, the purchasers did actually rescind, and rescind promptly, before the action was brought, and did all that is required of them by section 1689, which gives them the right, and section 1691, which prescribes the mode of rescission. They did not restore, because restoration was not accepted; but they offered to restore, and in the action they again offer to restore, everything of value received by them under the contract. This offer, with the prompt and proper notice, makes the rescission complete, and entitles them to the aid of a court of competent jurisdiction in securing to them the results and fruits of the rescission. To secure those results and fruits is the object of the action they have brought. Those results and fruits are the restoration of the moneys and things of value which they gave in consideration of the purchase. Most of those moneys, or the securities in which they have been invested, and the other things of value which were so given, are all ear-marked, so that they can be traced and identified, and were within the jurisdiction and are now within the possession of the court in which the action was brought. That the court has jurisdiction to afford the relief sought is supported by ample authority. (See cases already cited, and *Fratt* v. *Fiske*, 17 Cal. 380; *Watts* v. *White*, 13 Cal. 321; *Morrison* v. *Lods*, 39 Cal. 381; *Barfield* v. *Price*, 40 Cal. 535; *Herman* v. *Haffenegger*, 54 Cal. 161; *Marston* v. *Simpson*, 54 Cal. 189; *Fitz* v. *Bynum*, 55 Cal. 459; *Henderson* v. *Hicks*,

58 Cal. 364; *Collins* v. *Townsend*, 58 Cal. 608; *Hart* v. *Kimball*, 72 Cal. 283; and *Dunn* v. *Daly*, 78 Cal. 640,—in all of which this right of rescission upon offer to restore is recognized.) We concede, as claimed by petitioner, and decided in *Bohall* v. *Diller*, 41 Cal. 532, that the rescission must be *in toto*, and in this case it seems to have been so; the offer was to restore everything of value on the one side, and the demand that everything be restored on the other. The offer must be made good whenever the demand is complied with.

Incidentally, some authorities have already been cited tending to sustain the jurisdiction of the court in cases of this kind. The following may be referred to in addition:—

In *Rourke* v. *McLaughlin*, 38 Cal. 196, this court holds that specific performance in equity will be decreed whenever the parties or the subject-matter, or so much thereof as is sufficient to enable the court to enforce its decree, is within the jurisdiction of the court, and cites the case of *Penn* v. *Lord Baltimore*, 1 Ves. 144, where specific performance of a contract for lands in America was decreed in England; and *Ward* v. *Arredondo*, Hopk. Ch. 213; 14 Am. Dec. 543,—a case in many respects parallel to the one here under consideration, and in which the jurisdiction of the court was sustained.

In *Boswell's Lessee* v. *Otis*, 9 How. 348, the supreme court of the United States says: "Jurisdiction is acquired in one of two modes: 1. As against the person of the defendant, by the service of process; or 2. By a procedure against the property of the defendant within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment beyond the property in question. And it is immaterial whether the proceeding against the property be by attachment or by bill in chancery."

In *Cooper* v. *Reynolds*, 10 Wall. 318, the same court held, in a case where there was no personal service, and

the defendant was not within the territorial jurisdiction of the court, that the seizure of the property or the levy of the writ of attachment on it was the one essential requisite to jurisdiction, and that it unquestionably made the proceeding purely *in rem.*

In *Galpin* v. *Page,* 3 Saw. 124, Mr. Justice Field held that proceedings which are in form personal suits, but which seek to subject property brought by existing lien, or by attachment, or by some collateral proceeding under the control of the court, and those which seek to dispose of property or relate to some interest therein, but which touch the property or interest only through the judgment recovered, while not strictly proceedings *in rem,* so far as they affect property in the state, are treated substantially as such proceedings.

In *Pennoyer* v. *Neff,* 95 U. S. 727, which has become the leading case on the subject of jurisdiction acquired by publication, the supreme court of the United States says:—

"Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. *The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale.* Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem.* But where the *entire*

*object* of the action is to determine the personal rights and obligations of the defendants,— that is, where the suit is merely *in personam*, — constructive service in this form upon a non-resident is ineffectual for any purpose."

In *Windsor* v. *McVeigh*, 93 U. S. 279, where the same question was considered, the court says: " The theory of the law is, that all property is in the possession of its owner, in person or by agent, and that its seizure will therefore operate to impart notice to him."

The same principle is sustained in *Heidritter* v. *Elizabeth Oil Co.*, 112 U. S. 301, where the court adds to what had been said before, that jurisdiction may be acquired by the mere bringing of the suit in which a claim is sought to be enforced against property situate within its territorial jurisdiction; that this may by law be equivalent to a seizure, being the open and public exercise of dominion over it for the purposes of the suit.

Even in the case of *Arndt* v. *Griggs*, 134 U. S. 316, cited by petitioner, the court says: "It [the state court] cannot bring the person of a non-resident within its limits, — its process goes not out beyond its borders, — but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable method of imparting notice."

If the state court has such power with reference to title to real estate held by a non-resident, how much the more will it have the same with reference to personal property situate within its jurisdiction? And the real and primary purpose of the action here under review is to determine the title and right to possession of the moneys and securities now within the jurisdiction of the court, secured from the plaintiffs in the action by fraud, under a contract which they were by law authorized to rescind, and did rescind, upon discovery of the fraud.

Our statute says that in such a case the person who

gains a thing by fraud is an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. (Civ. Code, sec. 2224.) This being so, it cannot be that the arm of equity is so short or so weak that the fraudulent trustee, — he who has become trustee by fraud, — by remaining beyond the jurisdiction of the court, can prevent the court from seizing upon the subject of the trust within its jurisdiction, and restoring it to the defrauded *cestui que trust.*

That the court has such jurisdiction as is here claimed for it is fully sustained in *Felch* v. *Hooper,* 119 Mass. 52, where the case is clearly distinguished from that of *Spurr* v. *Scoville,* 57 Mass. 579, cited by petitioner; in *National Exchange Bank* v. *Stelling* 9 S. E. Rep. 1028; in *Quarl* v. *Abbett,* 102 Ind. 233; 52 Am. Rep. 662; in *King* v. *Vance,* 46 Ind. 251, where the court says: "The defendant may be brought in by publication; and when thus notified, a defendant is before the court for all purposes except the rendition of a personal judgment"; and in *Martin* v. *Pond,* 30 Fed. Rep. 15, where Mr. Justice Brewer says: "It may be conceded that notice to the defendant is necessary to divest him of his rights and interests, but the publication is notice; it is equivalent to the personal service of summons."

4. It is specially insisted on the part of petitioner that the court had no jurisdiction to appoint a receiver; but the argument in support of that contention is based almost entirely upon the proposition that the court has no jurisdiction generally. If it has general jurisdiction in the case, as we conclude that it has, then error in the exercise of that jurisdiction would be reviewable only on appeal. The appointment of a receiver, however, might in some cases be more than error, even when the court had general jurisdiction. The case might be one in which there was no authority to appoint a receiver. But we do not think that this is such a case. The authority to appoint a receiver in such a case is clearly given in

both the first and sixth subdivisions of section 564 of the Code of Civil Proccedure. (See also *Ex parte Cohen*, 5 Cal. 496: *People* v. *Norton*, 1 Paige, 17; *Verplanck* v. *Merchants' Ins. Co.*, 2 Paige, 438; *West* v. *Swan*, 3 Edw. Ch. 420; *Von Roun* v. *Superior Court*, 58 Cal. 358; *Southern Pacific R. R. Co.* v. *Superior Court*, 55 Col. 453.) Such an appointment in no way affects the title of any party to the property involved, but simply preserves the property and keeps it within the jurisdiction until the rights of the parties can be determined.

Satisfied as we are that the superior court, defendant here, has jurisdiction to proceed in the case before it, and here brought under review, and that thus far it has not acted in excess of its jurisdiction, the writ must be dismissed.

So ordered.

SHARPSTEIN, J., McFARLAND, J., PATERSON, J., and BEATTY, C. J., concurred.