## IOWA NATIONAL BANK OF OTTUMWA, IOWA, v. SHERMAN et al.

A plea of total failure or want of consideration for a note sued on fails if the evidence shows any consideration.

Under Civ. Code, § 1285, a maker of a note to escape liability thereon because of a partial failure of consideration or fraud must rescind by offering to return the consideration if return is possible, but no rescission or offer to return is necessary if the property is worthless.

In an action on a note by an indorsee not a bona fide purchaser, defendant maker's rights as to defenses of fraud and failure of consideration are the same as if the suit were by the payee.

In an action on a note defended on the ground of a failure of consideration plaintiff could show that after the machines for which the note was given were bought, defendants accepted the proceeds of insurance policies under a claim that the machines, which were damaged by fire, were worth more than the face of the note.

Any error in excluding testimony was harmless where the fact sought to be shown was developed by other evidence.

(Opinion filed, February 24, 1909.)

Appeal from Circuit Court, Minnehaha county. Hon. JOSEPH W. JONES, Judge.

Action by the Iowa National Bank of Ottumwa, Iowa, against

Paul F. Sherman and another, partners as Sherman & Bratager. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

See, also, 17 S. D. 396, 97 N. W. 12; 19 S. D. 238, 103 N. W. 19.

*Joe Kirby,* for appellants. *Boyce & Warren,* for respondents.

WHITING, J. This action is here upon appeal from the judgment of the trial court in favor of the plaintiff, and also from the order of said trial court refusing a new trial.

This cause is brought by the plaintiff corporation to recover as indorsee the amount claimed to be due on one promissory note for $1,005; such note bearing date August 14, 1901, and becoming due December 14, 1901, and executed by the defendants to the Janney Manufacturing Company, and by such company indorsed to the plaintiff. The complaint is in the ordinary form. The answer after pleading a general denial alleged that the Janney Manufacturing Company was the manufacturer of certain corn huskers; that the defendants were copartners engaged in the business of selling and jobbing farm machinery, including corn huskers; that on July 18, 1901, the defendants entered into a contract with the said Janney Manufacturing Company whereby they agreed to handle corn huskers manufactured by said company, and agreed to settle for said machines by notes as such machines were received; that at the time of entering into said contract the said company represented that they would furnish, and that they did furnish, the defendant with catalogues and printed matter describing the machines, their capacity for work, etc.; that such catalogues contained the form of warranty which said manufacturing company was to give to the farmers who purchased said machines; that relying upon these representations, or, as they designated them, warranties, the defendants made this contract, and under the same purchased three corn huskers at the agreed price of $1,005, giving the note in suit for same; that said note was executed and delivered before defendants had any opportunity to examine or inspect or place in use the said machines, and the note was given by the defendants relying upon the warranty and statements of said manufacturing

company; that said corn huskers were not as represented in said circulars or up to the warranties set forth in said circulars, but were wholly defective and unfitted for the purpose for which the same were manufactured. Defendants alleged certain particulars in which the machines did not come up to the alleged warranty, and alleged that the machines, if as warranted, would have been worth $1,675, but that in the condition in which they actually were manufactured and furnished the defendants, they were of no value whatever. It was alleged that, by reason of the facts above set out, the consideration for said note never became operative and wholly failed; that the said manufacturing company at the time they made the contract above referred to with the defendants knew that said machines were defective and not suited for the purpose for which they were manufactured, and that said company wrongfully and fraudulently and for the purpose of defrauding these defendants did make these representations and statements, and thereby induced these defendants to execute to it their note as aforesaid; and that said plaintiff had full knowledge at all times that said note had been obtained by fraud and without consideration, and that the alleged consideration had wholly failed; and, further, that, if plaintiff had said note, it held it merely as the agent of the payee and as a party to the fraudulent transaction for the purpose of enabling said payee to carry out its alleged fraudulent design.

A careful reading of this answer shows that while there was an allegation of breach of warranty, together with what the property would have been worth if as warranted and its actual value as it was, there is no attempt to plead damages from breach of warranty as a counterclaim, and there is no claim upon appeal, nor does it appear anywhere in the record, that the question of counterclaim was considered. Neither is there in said answer any plea of rescission or of an offer to rescind or any allegation that the said corn huskers had ever been returned, or that there had been any offer to return such corn huskers to said manufacturing company. It is also true that the record shows no rescission or offer to rescind by such return or offer to return said machines. It is quite evident that the pleader by said answer and the defense by their proof intended to raise and rely upon the following propositions:

first, that the note in question was obtained through the fraudulent representation and warranties as to the qualities of the corn huskers; second, the total want or failure of consideration for said note; third, knowledge of the two defenses above mentioned on the part of the plaintiff at the time it purchased the note; and, fourth, that the plaintiff was not in fact the owner of said note, but merely holding the same as agent for the original payee.

This case has been tried in the circuit court twice. There was an appeal upon the former trial; the original opinion of this court being found in 17 S. D. 396, 97 N. W. 12, and opinion upon rehearing granted being found in 19 S. D. 238, 103 N. W. 19. The evidence on this trial seems to be practically the same as on the first trial except certain additional evidence upon this trial which is hereinafter mentioned and which relates to the value of the machines, being certain evidence of a proof of loss under an insurance policy and testimony of one of the defendants.

The facts in this case as they now appear, in so far as the same are material to the determination of this appeal, are briefly as follows: The payee of this note, the Janney Manufacturing Company, were engaged in manufacturing corn huskers and other machinery, and the defendants were retail dealers and jobbers in farm machinery. These parties entered into a written contract under which defendants were to purchase and handle such corn huskers, which contract contained no warranties, but indorsed on the back thereof was a clause by which said manufacturing company agreed to give to each farmer who purchased a machine a printed warranty, which warranty should be a sufficient guaranty that the machine would work as represented. Under this contract, three machines were received, and the note in question given in settlement therefor. The defendants introduced evidence tending to show that said machines failed to do proper work, and that they failed entirely to meet the representation set forth in certain printed circulars furnished by said company, which circulars the defendants claimed were in their hands and relied upon by them when entering into said contract. Plaintiff's evidence is to the effect that long prior to the maturity of the note said company in accordance with the custom of said machine company and plaintiff

negotiated the note in question through the teller of said bank, who was authorized to take such paper subject to the approval of a discount committee, which committee afterwards approved of such transaction. This discount committee consisted in part of persons who were officers of the machine company as well as of plaintiff. The president of the machine company who was the party who negotiated said note to the bank testified that he had no knowledge of any defect in said machine, if any existed, or that plaintiff claimed any defense to said note, and the several members of the discount committee also testified to no knowledge of any fraud or want of consideration in said note.          。

During the course of the trial the defendants offered, and there was received in evidence, one of the circulars or pamphlets issued by said machine company, and being the pamphlets which defendants claimed led them to enter into said contract with said company and to give the note in question, which circular set forth quite fully the claimed merits of said corn huskers, including the amount of work which they would do per hour, and the necessary power to run the same. This exhibit was afterwards upon motion of the plaintiff withdrawn from the jury and the defendants objected thereto, and alleged error in such withdrawal. The plaintiff offered in evidence a formal sworn proof of loss made on behalf of defendant firm by one member thereof which set forth the loss claimed to have been sutained by the defendant from a fire which destroyed a storage building and injured property therein. It appears that on December 19, 1904, the three corn huskers involved in this case as the consideration of the note in suit were stored with other machinery in a building, and were damaged somewhat by a fire which destroyed the building. This sworn proof of loss over the admitted signature of one of the defendants purported to give the value of the personal property contained in said building at the time of the fire stating it to be $3,256.25, and giving the total loss on such personal property as $1,883.75, and claimed under the policy in question a right to recover $1,000 on such personal property; that being the total amount insured by said policy on such personal property. Said sworn statement refers to a schedule annexed in the following words: "The actual cash value of each

specific subject thus situated and described by the aforesaid policy at the time of loss, and the actual loss and damage by said fire to the same, as shown by annexed schedule, and for which claim is hereby made were as follows:" Then follows the above statement as to the value of the personal property listed therein and the amount claimed. Such schedule referred to is a statement of the loss of the defendant firm, and is signed by the adjuster of the insurance company. It gives the several items of personal property going to make up the property claimed to have been injured; the total of these items being $3,256.25. It also gives after each item the amount of loss thereon, totaling $1,883.75, which are, as will be seen, the identical amounts contained in the sworn statement of the defendant. Among the items of personal property mentioned in such schedule are the three corn huskers in question, two of them being valued at $887.50 and the other at $468.75; the loss on these being fixed at $943.75, leaving, as will be seen, outside of these three machines an apparent loss of less than $1,000, the amount specified in the policy. The sworn statement of the said defendant also contained the following: "No articles are mentioned herein but such as were in the building damaged or destroyed, and belonging to and in possession of the said assured at the time of said fire, * * * and no attempt to deceive the said company as to the extent of said loss, has in any manner been made." The evidence further shows that one of the defendants collected and received the said insurance money; he being the same defendant who signed and swore to such proof of loss. Upon the offer of this exhibit the defendants objected to the same on the ground that it was incompetent, immaterial, and irrelevant, which objection was overruled and exhibit received in evidence. The defendant who signed this proof of loss and received this money was a witness for the defense, and, upon redirect examination, was asked this question in relation to the property in the building at the time of the fire: "Did you have more personal property in there than the insurance you had?" This was objected to by the plaintiff as incompetent, immaterial, and irrelevant and the objection sustained.

A few well-established principles of law seem to us material

upon the consideration of the rulings of the court made during the trial of this case, and which have been referred to herein. Where a total failure of consideration or total want of consideration is pleaded, if the evidence shows any consideration for the note or other contract, the plea fails, and the defense of failure or want of consideration falls. Cheney v. Higginbotham, 10 Ark. 273; Whitare v. Culver, 9 Minn. (Gil. 279) 295. Where a note is given for a consideration which fails in part but is of some value, or where a note is obtained through fraudulent representations as to the value of the considerations, but such consideration is of some value, it is incumbent upon the maker of the note, if he desires to escape liability thereon, to rescind same by offering to return the consideration if it is possible to return it. Section 1285, Rev. Civ. Code S. D.; Fitz v. Bynum, 55 Cal. 459. Where the property for which a note is given is entirely worthless, there need be no rescission or offer to return the property given for said note in order to entitle the maker to defend against said note. Taft v. Meyerscough, 197 Ill. 601, 64 N. E. 711; Russ, etc., v. Muscupiable, etc., 120 Cal. 521, 52 Pac. 995. Let us consider this case, and the trial thereof, in the light of the above propositions as it would stand providing the original payee was suing on this note. Such payee would be entitled to recover unless the defendants were able to establish total failure or want of consideration no matter if there was ample proof to establish fraud in the procuring of the note as set forth in the answer herein, and this case between the present plaintiff and the defendant is exactly the same, admitting for the sake of this discussion that said plaintiff was not a bona fide holder of said note in question. Recovery could not be had upon said note, because, even if defendants could establish their allegation of fraud, yet such fraud is no defense when the note is sued upon, unless there has been a rescission of the contract, or it has been shown that there was a total failure or want of consideration, so that rescission by return or offer to return property is excused. Then, if under the evidence in this case, it should appear beyond all question that the consideration for the note was property of some value, even if not of the value of $1,005, then both the defense of want or failure of consideration and the de-

fense of obtaining the note by fraud must fail. We are thus brought to the all important question in this case; and that is whether or not the evidence established beyond dispute as against these defendants that the corn huskers in question had some value. The defense, as hereinbefore stated, introduced evidence which if believed might lead the jury to find these machines to be absolutely worthless. On the other hand, there is the undisputed proof shown by evidence which certainly was admissible, and which should be binding upon the defendants, to the effect that some three years after these machines were purchased, and while they were still in the possession of the defendants and claimed by them to be their property, the defendants accepted a large sum of money on the ground that such property while belonging to them had been damaged; they claiming such property at the time of such damage to be worth considerable more than the face of this note which they had given for said property. In addition to the evidence hereinbefore referred to, the record shows that the defendant who signed the proof of loss and who swore that the property therein referred to belonged to defendants, and who referred to the schedule wherein these machines were listed, when upon the witness stand stated under oath that he himself told the insurance representatives the value of the machines, though he claimed he had nothing to do with the fixing of the damage done to each machine. It is true that the defense asked the question hereinbefore mentioned and which was objected to, and objection sustained, to wit: "Did you have more personal property in there than the insurance you had?" Any answer to this question could not possibly have benefited the defendants. The written proof of loss showed that they had property of some three times the amount of the policy which they carried on same, but the question is not whether defendants would have been entitled to have recovered $1,000 on the property other than these corn huskers; in fact, it is not material to this case as to whether the insurance money was received on account of these corn huskers at all, but the material fact, and the fact which is to our mind conclusively established against the defendants by this proof of loss together with the testimony of one of the defendants upon the trial, is the fact that these machines in question were of very great value.

This fact having been established beyond all right to dispute same, then the plea of want or total failure of consideration falls even if suit was brought by the original payee, and, furthermore, the defendants' plea as to fraud in obtaining the note also falls, because it appears that, even if there had been fraud, there should have been a rescission or at least an offer to rescind and neither is alleged or attempted to be proven.

The above disposes of all four questions attempted to be raised by the pleadings in this case, because, if the defendants under the plea and proof thereunder, would have no defense against a suit by the payee of said note, they cannot have any against the plaintiffs whether considered as bona fide holders of the note or not, and the question of knowledge on the part of the plaintiff, or of whether or not the plaintiffs were holding said notes as agent for the payee thereof becomes immaterial. It therefore appears that, when this case was rested, the court would have been fully justified in directing a verdict in favor of the plaintiff. This renders unnecessary the consideration of any other questions raised on this appeal and which have not been mentioned herein.

The judgment of the trial court and its order denying a new trial are affirmed.