## Elmer E. Fitzkee, Appellant, v. Louis A. Hoeflin, Appellee.

### Gen. No. 5,900.

1. APPEAL AND ERROR, § 1682*—*when error in ruling on demurrer waived.* A defendant by pleading to and answering a bill after his demurrer thereto has been overruled waives the right to question the ruling on the demurrer.

2. CANCELLATION OF INSTRUMENTS, § 29*—*sufficiency of bill.* In an action by a vendor for the cancellation of a contract for the sale of land on the ground that the actual contract was that the land should be deeded subject to a certain right of way and that the purported contract did not contain such provision, and that it was not delivered with the intent on the part of either party to be the contractual relation between them, *held* that a demurrer thereto that the complainant under either his special or general prayer for relief had no remedy against the defendant which a court of equity would enforce was properly overruled.

3. FRAUDS, STATUTE OF, § 82*—*persons entitled to avail of.* A party cannot be permitted to use the statute of frauds and perjuries to harvest the fruit of his fraud.

4. VENDOR AND PURCHASER, § 94*—*grounds for cancellation.* Because facts do not furnish grounds for a reformation of a land contract, it does not follow that such facts may not furnish grounds for relief by way of cancellation.

5. VENDOR AND PURCHASER, § 94*—*grounds for rescission of contract.* A vendor may be entitled to a rescission of a contract under

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

facts that naturally call for a reformation, if the purchaser refuses to abide by the true original agreement.

6. Vendor and Purchaser, § 94*—*grounds of relief when delivery of contract procured by fraud.* Where parties entered into a land contract and the instrument omitted a part of the actual agreement that the lands were to be conveyed subject to a certain right of way, and when the instrument was delivered to the purchaser the vendor called his attention to the omission but the purchaser said, "I understand that, but it will be all right," that he had to catch a train and could not wait to write another contract, *held* that the vendor might be entitled to relief from the terms of the written contract on the ground that there was no delivery of the contract, or on the ground that there was fraud in procuring its delivery.

7. Contracts, § 57*—*what essential to constitute a delivery.* It is necessary that an instrument should be understood by the parties to be complete and ready for delivery, in order to have a mere placing it in the hands of the grantee construed into a delivery.

8. Evidence, § 344*—*when parol evidence admissible to show nondelivery of instrument.* While a written contract cannot be changed by evidence of a prior or contemporaneous parol agreement, whether such contract was delivered must usually be determined from a consideration of such evidence.

9. Contracts, § 58*—*when procurement of delivery will be presumed fraudulent.* Where a person induces the delivery of a contract to him by promising that an omission of a provision therein would not be taken advantage of, and he thereafter seeks to enforce the terms of the written contract, a presumption of fraudulent intent at the time of the delivery of the instrument may be indulged in a suit to rescind the contract.

10. Cancellation of Instruments, § 25*—*jurisdiction of court of equity.* A court of equity has jurisdiction to cancel a contract on the ground of fraud even in cases where the law affords relief, and this especially where the court properly took jurisdiction on a bill to reform a contract and there was a full hearing and no controversy as to the facts which would justify relief of cancellation.          •

11. Vendor and Purchaser, § 101*—*condition precedent to rescission of land contract.* A vendor seeking the cancellation of a land contract, not within the statute of frauds, must offer to return to the purchaser the amount received by him as an advance payment on the contract.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded with directions. Opinion filed April 15, 1914. Rehearing denied May 21, 1914. *Certiorari* denied by Supreme Court (making opinion final).

N. F. ANDERSON and HENRY WATERMAN, for appellant.

JOHN B. KING, CLARENCE W. HEYLAND and CARL A. MELIN, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Appellant, Elmer E. Fitzkee, filed a bill in chancery to reform a written contract between himself and appellee, Louis A. Hoeflin, and to enjoin a suit at law that had been brought by Hoeflin on that contract. He afterwards amended his bill praying that the contract be cancelled instead of reformed, and the case resulting in the dismissal of his bill for want of equity he prosecuted this appeal.

In the course of the proceeding there was a reference to the master in chancery and he reported the facts. The evidence is not shown in the record filed here but each party adopts the statement of facts made by the master and asks us to adopt it in our consideration of the case. It appears that for some months prior to December 10, 1910, appellant had, through agents, been offering for sale a half section of land in Henry county, Illinois, on which there was a drainage ditch large enough with its spoil banks to occupy at least eighteen acres of the half section and through which ditch flowed the main channel of a river. The drainage corporation had some right or title in the land, the exact nature of which is not disclosed, securing a right of way for the ditch. The proposed sale of the land was to be made subject to the right and title of the drainage corporation.

Appellee lived in Tazewell county, Illinois, and had for some time been aiding appellant's agents in the effort to find a purchaser for the land, and was familiar with the physical condition of the property and with the title as affected by this drainage proposition, and knew that title to the land could only be made subject to the rights of the drainage corporation.

On December 10, 1910, he appeared with his attorney at the office of appellant's agents in Henry county, and there orally arranged with them for the purchase by himself of this land, subject to said right of way, for $22,300; $1,000 of the purchase price to be paid in advance and the balance in deferred payments, with deed to be executed and possession of the premises given on or before the first day of the following March. Appellant was then called in, and appellee and his attorney wishing to leave town on a train that was soon due, the attorney drafted a contract in duplicate setting out the various provisions of the agreement, except that in relation to the right of way, which he omitted, and provided a penalty by way of liquidated damages of $1,000 to be paid by either party defaulting; appellee paid the $1,000, and each of them signed and acknowledged the contract. There was some haste in the matter, but just before or just after the signing and before the exchange of the papers, and after they had both read the contract, appellant said to appellee in substance: "The right of way is not mentioned in here and it should be there;" and appellee answered in substance: "I understand that, and it will be all right, but we want to catch this train and haven't time to stay here and write another contract." Each party then took one of the duplicates and they separated.

At the designated time appellant tendered a warranty deed of the premises subject to the drainage right of way, and appellee refused to accept the deed because it was made subject to said right of way and

therefore not in compliance with the terms of the contract as written.

Afterwards appellee began an action at law to recover the $1,000 advance payment, and the other sum of $1,000 provided in the contract as liquidated damages for nonperformance. Appellant filed this bill in chancery to enjoin the prosecution of that suit at law, setting up the facts as above stated and praying that the contract be reformed on the ground of fraud and mistake, and for general relief. An answer was filed and the cause referred to the master in chancery to report his conclusions of law and fact. He reported the facts as before stated with his conclusion of law that they did not entitle appellant to a reformation of the contract; this view was adopted by appellant and he amended his bill striking out the averment of mistake by the scrivener in drafting the contract, and adding the averment that the actual contract was, that the land should be deeded subject to said right of way, that the purported contract did not contain that provision, and that said written purported contract was not delivered with the intent on the part of either party that it was to be the contractual relation between the parties; striking out the prayer that the contract be reformed, and substituting the prayer that the written instrument be decreed to be delivered up and cancelled.

The case then stood on the amended bill setting up the facts as above stated and praying that the contract be cancelled and for general relief. Appellee filed a general demurrer to the bill as amended which was overruled. He then filed a plea to the whole bill of the statute of frauds, and took an order that his answer to the original bill stand as an answer to the amended bill. The plea was set down for argument and on hearing was held sufficient to bar the action. A decree was entered to that effect, and also overruling exceptions of appellant to the master's report, adopting its find-

ings and approving and confirming the report, and finding from the pleadings and evidence that the equities were with appellant, and dismissing the bill at complainant's costs.

Appellee seeks by cross-error to question the action of the court in overruling his general demurrer to the amended bill. By pleading to and answering the bill after his demurrer was overruled he waived his right to raise that question; but we are of the opinion that the court properly overruled the demurrer. It raised the question whether the complainant under either his special or general prayer for relief had any remedy against the defendant that he could enforce in a court of equity. Suppose the error had been in describing the whole section of land instead of the half section, and the writings had been exchanged as here, on the promise of the grantee that he would not take advantage of the error. Is our system of jurisprudence such that the party inducing delivery by means of his promise could obtain aid from the court to harvest the fruit of his fraud? We think not, and we are also of the opinion that he can not be permitted to do it by using as an instrument the statute of frauds and perjuries so long ago enacted and for so many years used for the purpose of preventing frauds.

The master found as matter of law that the writing could not be reformed because, as he finds, the scrivener made no mistake, that is, he was not told by either party to put the omitted provision in the contract, and each party knew when he signed the contract, or at least before the papers were exchanged, that the provision was omitted. He expressly bases his finding of law on the decision of the Court in *Smith v. Rust*, 112 Ill. App. 84. That is a case much like this on the facts claimed, but it was decided by the court on the ground that the facts were not satisfactorily established by the proof, and the discussion of principles of law applicable to the facts claimed is *dicta*, and ap-

parently *dicta* that only the writer of the opinion was willing to accept as the law, for it is expressly stated in the opinion that it is the view of the writer of the opinion. If it be conceded that the master was correct in his conclusion that the facts did not furnish ground for reformation of the contract, as both parties in their argument here do concede, and we express no opinion on that question, still it does not follow that the facts may not furnish ground for equitable relief by way of cancellation of the contract, a remedy which equity courts alone are able to confer (6 Cyc. 286); and one which is exercised when the transaction is different with respect to its subject-matter or terms from that which was intended (*Id.*, and Pomeroy Eq. Jur. sec. 870); and the vendor may be entitled to a rescission of the contract under facts that naturally call for reformation if the purchaser refuses to abide by the original true agreement (39 Cyc. 1248; *Cullison v. Connor*, 222 Ill. 135).

Appellant may be entitled to relief on two different views of the case: First, that there was no delivery of the contract. Suppose the papers as drafted had located the land in the wrong county, fixed the time for delivery of the deed and possession in May instead of March, and made the consideration $2,200 instead of $22,300, and the parties had noticed these mistakes and mentioned them before delivery of the papers, and agreed that the contract was so erroneous and incomplete as to be worthless as a written contract, but had concluded to each keep a copy as a memorandum of the truth it did contain and dispense entirely with the written agreement, and each trust the other to act in good faith in carrying out what they had orally promised to do the next March by way of conveying and paying for the land. We suppose these facts being admitted there would be no difficulty in determining that there was no existing written contract between

the parties, notwithstanding each had in his possession an apparently complete and perfect contract signed and acknowledged by both parties. This case only differs from the one supposed in the magnitude of the error and the clearness of the language used when the papers were exchanged. It seems to us appellee should not be heard to complain of that construction of what the parties said at the time of the exchange of these writings, and that a court of equity should adopt any reasonable meaning of the words used, necessary to prevent a party from invoking a technical rule of law to enable him to perpetrate wrong and injustice on another. It is necessary that the instrument should be understood by the parties to be complete and ready for delivery, in order to have a mere placing it in the hands of the grantee construed into a delivery. *Jordan v. Davis,* 108 Ill. 336. While a written contract cannot be changed by evidence of a prior or contemporaneous parol agreement, whether that contract was delivered must usually be determined from a consideration of parol evidence, and the mere placing of the writing in the hands of one of the parties does not of itself necessarily constitute a delivery; the inquiry is, what was the intention of the parties at the time? *Wilson v. Wilson,* 158 Ill. 567.

The other view of the case is, that the contract was delivered with the express understanding and agreement of the parties that it was incomplete, and such delivery was induced by appellee for his own accommodation to enable him to take a train for home without waiting for its completion, and to induce the delivery he expressly promised that he would treat it as though the omitted matter was inserted. It certainly outrages every sense of justice that he should be permitted to take advantage of the confidence reposed in him. If he in this way induced the delivery of the paper intending to take advantage of the omission of the right of way provision, he was guilty of

fraud in inducing and procuring the delivery of the instrument; and it is a legitimate inference from the admitted facts that he did then intend exactly what he afterwards attempted to do. The presumption of fraudulent intent at the time of the execution of a deed has been repeatedly indulged in suits for rescission of conveyances of land in consideration of future support; the conduct of the grantee after the execution of the contract has been held sufficient evidence of a fraudulent intent at the time of the execution. *McClelland v. McClelland,* 176 Ill. 83, and cases there cited and discussed. It would seem the presumption might as well be indulged in this case as in those cases and with the same equitable results.

Appellant urges as a ground of equity jurisdiction that the contract is a cloud on his title. It is answered that there is no allegation or proof that the contract is recorded in the county where the land is situated, therefore on the authority of *Howe v. Hutchison,* 105 Ill. 501, and *Parker v. Shannon,* 121 Ill. 452, there is no cloud on his title. The authorities on that subject are collected and reviewed in *Allott v. American Strawboard Co.,* 237 Ill. 55. Relief may be granted under the rule adopted in this State in some cases where the instrument sought to be cancelled is not of record in the office of the Recorder of Deeds; but the facts of this case may not bring it within that ground of equity jurisdiction; if not we are of the opinion that the court has jurisdiction on the ground of fraud, in which it has concurrent jurisdiction with courts of law, even in cases where the law affords relief; and while it will generally decline to act where the legal remedy is in all respects adequate, it may and sometimes does grant relief in such cases. 16 Cyc. 81.

If the contract be treated as not delivered, quite likely that defense could be made in the suit at law sought to be enjoined. But even in that view of the case it is true equity properly took jurisdiction on bill

filed to reform the contract, there has been a full hearing and there is left no controversy whatever as to the facts, no issue of fact to be passed on by a jury, nothing but a question of law to be decided by the court. There can hardly be a rule of law or practice requiring the chancellor to dismiss the bill and then, sitting as a judge on the common-law side of the same court, determine the issue of law presented. We do not hold that the remedy at law is adequate, it seems to us in any view of the case a court of chancery can better determine the controversy; but, even if that be not so, the court having obtained jurisdiction of the parties and satisfactorily settled all disputed facts, should proceed to a final disposition of the case. *Bollnow v. Roach,* 210 Ill. 365.

Appellant in amending his bill prayed for cancellation, instead of reformation, of the contract, and did not offer to return the $1,000 he had received as advance payment on the contract that he seeks to cancel. He relies in his argument on holdings that a party who makes a part payment on a contract, not enforceable because of the statute of frauds, cannot refuse to fulfil the contract and recover back the money so paid. That may be true, but we are holding this contract not within the statute, and it is to be cancelled on the application of appellant. The authorities are numerous that as a condition of release he must return the amount received with legal interest; no authority to the contrary is cited.

A temporary injunction was issued at the beginning of this suit and has been kept in force pending the outcome of this appeal. Some questions are argued touching the granting and refusing to dissolve the injunction, but they are now unimportant in the view we have taken of the case.

The decree is reversed and the cause remanded with directions to enter a decree providing that upon the payment by appellant to appellee, or into court for appellee, of the said sum of $1,000 with interest at the

rate of five per cent. per annum from December 10, 1910, within thirty days from the entering of said decree said writing shall be delivered up and cancelled, and the injunction made perpetual and each party to pay one-half the taxable costs, and that upon failure to make such payment within the time limited the bill shall be dismissed, at complainant's cost.

*Reversed and remanded with directions.*