FARMERS & MINERS' STATE BANK, APPELLANT, *v.*
PROBST, RESPONDENT.

(No. 6,211.)

(Submitted November 29, 1927.  Decided January 6, 1928.)

[263 Pac. 693.]

*Banks and Banking—Promissory Notes—Consideration—Burden of Proof—Presumptions—Appeal.*

Contracts—What Constitutes a Good Consideration.
1.  Under section 7503, Revised Codes 1921, any benefit conferred upon a promisor or a prejudice suffered or agreed to be suffered by the promisee, as an inducement to the promisor, is a good consideration.

Banks and Banking—Promissory Notes—Prejudice Suffered by Payee a Good Consideration.
2.  Where the purchaser of real property, desiring to assume the liability of the vendor upon a promissory note held by a bank, executed a new note to take the place of the former, and the bank, instead of applying a part of the cash payment made by the vendee and deposited by the vendor, to the payment of the latter's note, as it properly could have done, accepted the new note in lieu thereof, it thereby suffered such a prejudice which it was not lawfully bound to suffer as an inducement for the maker of the second note to sign it, as constituted a good consideration for the note.

Same—What not a Lawful Defense to Action.
3.  That the payee of a promissory note verbally advised the maker at the time he executed it that he would never be called upon to pay it, is not a lawful defense to an action thereon.

Same—Substantial Partial Consideration Sufficient.
4.  The fact that the maker of a promissory note did not receive all he desired by way of consideration did not vitiate his promise; having received a substantial part of it, it was sufficient to sustain the contract.

Same—Want of Consideration—Burden of Proof—Presumption.
5.  The burden of showing a want of consideration to support a written instrument lies with the party seeking to invalidate it on that ground, the presumption being that there was a consideration.

Same—Holder may Sue Though Note Held as Collateral to Another Instrument.
6.  The holder of a promissory note may sue upon it even though it be held as collateral to another instrument.

---

1.  See 6 Cal. Jur. 163; 6 R. C. L. 654.
2.  See 6 Cal. Jur. 171; 6 R. C. L. 656.
5.  See 6 Cal. Jur. 202.

Appeal—When Supreme Court will not Make Final Disposition of Case.
7.   Where the district court, in a cause tried by it alone, erroneously disposed of an action on a promissory note on the issue of want of consideration, leaving the second issue as to delivery upon condition not performed undecided, upon which latter the evidence was in sharp conflict, the supreme court will not make final disposition of the case but order a new trial.

[1, 2]   Banks and Banking, 7 C. J., sec. 351, p. 653, n. 84.   Bills and Notes, 8 C. J., sec. 347, p. 212, n. 7; sec. 348, p. 214, n. 17; sec. 355, p. 220, n. 92.   Contracts, 13 C. J., sec. 144, p. 311, n. 64; sec. 193, p. 342, n. 7.   Justices of the Peace, 35 C. J., sec. 235, p. 625, n. 4.
[3]   Bills and Notes, 8 C. J., sec. 347, p. 212, n. 7; sec. 1066½, p. 806, n. 57 New.   Contracts, 13 C. J., sec. 193, p. 342, n. 7.
[4]   Bills and Notes, 8 C. J., sec. 1023, p. 754, n. 84.   Contracts, 13 C. J., sec. 243, p. 368, n. 2.
[5]   Bills and Notes, 8 C. J., sec. 1299, p. 995, n. 70.   Contracts, 13 C. J., sec. 946, p. 760, n. 76.
[6]   Pledges, 31 Cyc., p. 885, n. 71.
[7]   Appeal and Error, 4 C. J., sec. 2536, p. 644, n. 48; sec. 3241, p. 1201, n. 42.

*Appeal from District Court, Cascade County; W. H. Meigs, Judge.*

ACTION by the Farmers & Miners' State Bank against August Probst.   Judgment for defendant in justice court and in district court, and plaintiff appeals.   Reversed and remanded.

*Messrs. Graybill & Graybill,* for Appellant, submitted a brief; *Mr. Leo C. Graybill* argued the cause orally.

*Messrs. Ayers & Polutnik* and *Mr. Loy Molumby,* for Respondent, submitted a brief; *Mr. Frank Polutnik* argued the cause orally.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action on a promissory note.   Plaintiff is and was a bank, doing a banking business at Belt, Montana.   In October, 1922, it held a promissory note, theretofore executed to it by one Shavey, as maker, and one Collard and one Alcanter, as comakers.   The note was overdue.   It had matured in June, 1921.   October 19, 1922, there was due on it and

7.   See 2 Cal. Jur. 994.

unpaid the sum of $173.48. It appears that Shavey was considered financially irresponsible. Once a resident of Belt vicinity, he had left there and was residing in California. It appears further that Collard, financially irresponsible, once a resident of Belt vicinity, had gone to parts unknown. Alcanter was the owner of and in possession of a livery barn and lot on which it stood in Belt. He was regarded as the only responsible signer of the note.

In October, 1922, Alcanter was old and in poor health. He wanted to sell his livery barn and the lot on which it stood and go to California, for his health. He made a deal with defendant, for the sale of the barn and lot to defendant. It appears that at least a part of the consideration was to be $1,000, in cash. Whether or not there was to be any further consideration is not certain. October 19, 1922, defendant, a farmer near Belt, accompanied by his wife, came to town, in the forenoon, to consummate the purchase and taking over of the barn and lot.

Alcanter had previously bought the property of a Mrs. Graham but he had not paid her all of the purchase price. On account thereof, he owed Mrs. Graham $188.50 and he had not obtained of her a deed to the property. A deed from Mrs. Graham to Alcanter was in the plaintiff bank, to be delivered to him, upon payment into the bank, for her, of the sum of $188.50, balance due.

In the forenoon of October 19, 1922, Alcanter and defendant went to the bank and engaged in conversation with Provin, the cashier and manager of the bank. It appears that one of their objects, perhaps the principal object, in so doing was to effect the sale and transfer of the barn and lot by Alcanter to defendant. That matter was taken up by them with Provin but, it appears, was not then completed. It appears that, at that time, defendant gave Alcanter a check for $200, on the deal, and said he could not pay the remaining $800 due until later in the day, as, before he could do so, he had to go to an elevator and have cashed some grain certificates held by him. Alcanter and defendant then departed. They returned

to the bank, in the afternoon, after banking hours, accompanied by defendant's wife. She did not accompany them to the bank, in the forenoon.

Upon their return, in the afternoon, Alcanter, defendant and his wife and Provin went into a private room of the bank and there continued and completed the work of the forenoon, the transfer of the barn and lot from Alcanter to defendant. The latter gave Alcanter a check for $800. It and the check for $200, given in the forenoon, were deposited in the bank, by Alcanter, to his credit. He gave Provin, for Mrs. Graham, his check for $188.50, in payment of balance due her for the barn and lot, and received from Provin a deed to the premises from Mrs. Graham to Alcanter. The latter then gave to defendant a deed, drawn by Provin, conveying the property from Alcanter to defendant. We have said the property involved in these transfers consisted of a barn and lot. The record refers to it as a barn but, we take it, there must have been real estate with it, as the conveyances are called deeds.

Upon their visit to the bank in the forenoon, Alcanter and defendant made known to Provin that they wanted Alcanter released from the note which the bank held against Shavey, Collard and Alcanter and his name taken off thereof and desired that defendant be allowed to sign the note in place of Alcanter and to assume the latter's liability thereon. Alcanter said he wanted that done and defendant said he wanted to sign in place of Alcanter. Provin told them that could not be done but said defendant could execute a new note, payable on demand, to the bank for $173.48, the amount due on the first-mentioned note. Defendant agreed to that and he did it. Whether he did it at the meeting in the forenoon or in the afternoon is not free from dispute but it was done on one of those occasions. His note provided for interest, from date until paid, at the rate of ten per cent. per annum and for a reasonable attorney fee. The bank kept both notes. Alcanter drew from the bank all he had there on deposit and went to California.

In March, 1925, neither note having been paid, the bank brought suit, in a justice court, against defendant, on the note he executed to the bank. The complaint is in ordinary form in action upon a promissory note. Defendant answered. The answer admits the execution of the note and denies all other allegations of the complaint. For further answer and by way of affirmative defense, the answer alleges that the plaintiff bank was the owner and holder of the note executed by Shavey, as maker, and Collard and Alcanter, as comakers, upon which was due, October 19, 1922, $173.48; that on that date Alcanter desired to have his name stricken therefrom and that, to that end, he and defendant went to the bank, to have Alcanter's name removed therefrom and defendant's substituted; that the cashier said it would be impossible to release Alcanter but that if defendant would sign a new note it would be all right and the bank would not look to defendant to pay it; that thereupon defendant agreed with the cashier that he would sign a new note, provided the bank would send it to Shavey, for his signature, which the bank agreed to do, and that it would be binding on defendant when signed by Shavey; that the bank never sent the note to Shavey, for his signature, and it does not bear his signature; that the bank never surrendered the original note, signed by Shavey and Alcanter, nor has it relieved Alcanter from obligation thereon; that defendant received no consideration for making the note he made; that the bank was put to no disadvantage on account thereof and defendant never received any advantage for the execution of the note. Suit being brought in justice court, no reply was permissible and none was made. The new matter of the answer was deemed denied. (Sec. 9646, Rev. Codes, 1921.)

Upon trial, defendant had judgment. Plaintiff appealed to the district court. There the case was tried to the court, without a jury. Thus, it is seen defendant admitted execution of the note sued on and set up two affirmative defenses: (1) lack of consideration; and (2) delivery upon condition which was not performed. The district court made findings of fact

upon the first defense, lack of consideration, and therefrom drew conclusions of law in favor of defendant. It declared that, on account thereof, the issue of conditional delivery and condition unperformed need not be decided. Accordingly, judgment in favor of defendant was rendered and entered.

Plaintiff appealed to this court and assigns five specifications of error. The first thereof is that the court's conclusions of law are not supported by its findings of fact. The second relates to the issue of conditional delivery. The third and fourth relate to the issue of consideration. The fifth relates to failure to render judgment for plaintiff. We take up the first, third and fourth and shall consider them together.

The first specification of error appears to be well taken. In its findings of fact, after reciting the facts, as it deems disclosed by the evidence, developed by the two conferences at the bank and leading up to the signing of the note in question by defendant, the court says: "Thereupon Provin made out and Probst signed the note above set out in full, Provin promising that he would not demand payment from Alcanter, in cash, at that time." That is a correct, clear and succinct statement of fact as to what occurred when defendant signed the note. In that statement are united two salient facts, i. e., defendant signing and Provin promising to refrain from something he had the power to do. They go hand in hand, just as stated by the court. True, in the next sentence, the court says: "No consideration passed from plaintiff to defendant for said note." That pronouncement seems to be in the nature of a conclusion of the court, drawn from facts about which there is no dispute. We cannot see that it is justifiable.

Careful perusal of the evidence shows it is undisputed that, [1, 2] when Alcanter and defendant went to the bank, in the forenoon, and engaged in conversation with Provin, about the first thing of which they spoke to Provin (at least it was during that conference) was the fact that they wanted Alcanter's name taken off of the note signed by Alcanter and others and defendant's substituted. Alcanter said he wanted it done; defendant said he wanted to sign in place of Alcanter; he

was there for that purpose. Plainly, defendant wanted Alcanter released and wanted to take his place. That was what they were there for; and, as well, to effect the transfer of the barn property from Alcanter to defendant. There was to be, upon that transfer, a cash payment by the latter of $1,000.

Whether the plan to have defendant take Alcanter's place on the note was a part of the consideration for the sale of the property and whether the deal depended on that or whether defendant was willing to supplant Alcanter on the note merely as a matter of friendly accommodation and as an accommodation signer is not clear. Alcanter died before the trial and his testimony had not been obtained. That left Provin and defendant the only parties present at the forenoon conference and both testified at the trial. Provin testified positively that, from what Alcanter and defendant, in the presence of each other, told him, the proposition for defendant to take Alcanter's place on the note and, later, for defendant to execute the new note was in connection with the sale of the property, was "part of the deal for the barn." Defendant was uncertain. At one time, he would say it did not have anything to do with the barn deal and, at another time, would say he did not know whether it had or not. At any rate, evidently the two matters, sale of the property and making by defendant of a new note, were closely interwoven. They were discussed together and it might be pertinent to inquire if defendant would have been agreeing to assume Alcanter's liability had there been no barn deal; but we consider it immaterial if the making of the note was a part of the consideration for the sale or if it was an accommodation act.

Subject to that premise, as to why defendant signed the new note to us it is plain from the evidence. He told Provin he wanted to put his name on the old note, so as to release Alcanter therefrom. Whether he wanted to release him as a part consideration for the barn or as an accommodation act matters not; he wanted Alcanter released. He wanted Alcanter's name taken off and his put on. Provin told them that could not be done. Then it was suggested by one of them

[81 Mont. 248.]

that defendant add his name, as a signer, to the old note but Provin would not consent to that. The idea all the time, as plainly stated by Alcanter and defendant, was for defendant to assume Alcanter's liability on the note, so Alcanter, who appeared to need all he was getting from the sale of the barn, would not have to pay the note out of what he was getting and would have all of the proceeds, less what he would pay on some minor debts, with which to go to California. Provin testified: "As to the method of substituting Mr. Probst for Mr. Alcanter, it was stated that the method was immaterial to them, so long as what they had in mind could be done."

Provin having refused to take off Alcanter's name, defendant's to be substituted, and having refused to let defendant add his signature to the old note, it was then he suggested, as a solution, that defendant give a new demand note for $173.48 and then that defendant did it; whether at the forenoon or afternoon conference is not clear. Provin said it was done in the forenoon and before the barn deal was completed; defendant said, in the afternoon and after the barn deal was completed; Mrs. Probst said, in the afternoon but her testimony shows she had little conception of what was going on at the afternoon conference. However, at which conference defendant gave the note is immaterial. Having given it, there arises the inquiry: Was there any consideration for it?

Section 7503, Revised Codes, 1921, defines a consideration as follows: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is, at the time of consent, lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." The note sued on was a promise. It is seen a consideration may be a benefit to the promisor or a prejudice to the promisee.

It may be that, for his note, no benefit was conferred on defendant, the promisor, although we do not concede it. Generally, granting a party what he wants is considered a benefit to him; if not a benefit, naturally he would not want it. De-

fendant wanted to assume Alcanter's liability on the old note, so Alcanter would not have to pay it. The benefit may be a benefit to a third party. (8 C. J. 212 and cases cited; 13 C. J. 342 and cases cited.)

However, there can be no doubt that, by taking defendant's note, the bank, the promisee, agreed to suffer and did suffer a prejudice which it was not lawfully bound to suffer. It took defendant's promise, in lieu of the cash, within its grasp, with which it could have effected complete payment of the note of Shavey and others, held by it. It let the cash go and took a promise. The bank was in a position to collect from Alcanter, out of the proceeds of the barn sale, the amount due on that note. Alcanter received $1,000 for the barn; he deposited it in the bank; he paid Mrs. Graham $188.50. Out of the balance, the bank could have applied on the Shavey note $173.48, the amount due. There was nothing to prevent. It was the bank's privilege. (3 R. C. L. 588; *Bank of California* v. *Starrett,* 110 Wash. 231, 9 A. L. R. 177, 188 Pac. 410; *First National Bank* v. *Peltz,* 176 Pa. 513, 53 Am. St. Rep. 686, 36 L. R. A. 832, 35 Atl. 218; *Doctor* v. *Riedel,* 96 Wis. 158, 65 Am. St. Rep. 40, 37 L. R. A. 580, 71 N. W. 119; *Marsh* v. *Oneida Cent. Bank,* 34 Barb.—N. Y.—298.) Provin testified he was going to require Alcanter to pay it; he said Alcanter had asked for and had been given a statement of what he owed the bank; he said he knew Alcanter to be a man who took care of his obligations. Provin testified: "Mr. Alcanter I considered the only responsible man on the note at that time; Mr. Alcanter had no assets besides the barn that I knew of." He testified further: "The only thing promised in return for the securing of the note [defendant's] was that we wouldn't demand payment from Mr. Alcanter, in cash, at that time. * * * I let Mr. Alcanter leave the state with the money that might have been paid on the note; I had this money in our possession and could have applied it on this note of Alcanter's had I desired; I did not apply it on that note, because I agreed, upon taking this note under consideration, not to apply it in that way."

None of that testimony was disputed. It is clear that the bank, in consideration of defendant's note, refrained from collecting from Alcanter and let him take his money and go to California. True, Provin said he did not release Alcanter from the old note but he explained Alcanter was being released from any chance to collect from him; Alcanter was using his last resource in going to California. Provin said: "I felt if I did not demand cash then I would never have any further opportunity to." Certainly that was prejudicial to the bank and, in the language of section 7503, supra, it was such as the bank was not "lawfully bound to suffer."

Was that prejudice, in the language of the statute, "an inducement to the promisor"—defendant? Let us see. What induced defendant to give the note? Something induced him [3] to do it. He did not do it for fun or as an idle act. He testified: "I signed this note just to please Mr. Provin." That is not satisfactory. Inevitably, there was something back of it. Provin had some reason for suggesting he sign. Defendant testified further: "I signed the note because he [Provin] told me that he would never try to collect anything off of me." That, of itself, is not a lawful defense. (8 C. J. 806; *Bank of California* v. *Starrett,* supra; *Oilton State Bank* v. *Ross,* 108 Okl. 24, 234 Pac. 567; *Bank of Bingham* v. *Perkins,* 43 Idaho, 310, 251 Pac. 627.) He testified further: "As to how I happened to sign that note, I said Alcanter wanted to get off the other note and Provin said he couldn't take his name off but he said he could make a new note and have me sign it. * * * I signed it, as I told you before, because Alcanter wanted to get off." Provin testified: "I did consent to take Mr. Probst's note [Exhibit A] for the amount then due on the note, with the idea of his obligating himself in the matter. * * * Mr. Probst stated his willingness to assume the liability. * * * I promised both parties that Mr. Alcanter wouldn't be expected to pay it."

It is inevitable from the evidence that Alcanter and defendant wanted Alcanter relieved of liability and wanted defendant to assume it. The only way Provin would consent for it to

be done was for defendant to make a new note and, on account thereof, to let Alcanter take his money and go away. Defendant agreed. Undoubtedly that was the inducement for him to sign. There can be no other conclusion. It was sufficient. (8 C. J. 212 and cases cited; 13 C. J. 342 and cases cited.)

Was that a consideration? Counsel for defendant, in their [4] brief, correctly admit that if Alcanter had been formally released from obligation on the old note it would have constituted a consideration. The failure of that consideration is that of which they complain. We think Alcanter, in effect, was released, to all practical intent and purpose. However, if defendant did not get all he wanted originally, in the way of consideration (full and formal release of Alcanter), he got a part thereof; he got a waiver of the right to enforce immediate payment by Alcanter and leave for Alcanter to take his money and depart the state, practical immunity for Alcanter. He was told that was all he could get and, with that knowledge, apparently satisfied, he gave his note. The greater includes the lesser. When Alcanter was allowed to keep his money and go his way, was not required to pay, it certainly was a part, very substantial part, of what defendant wanted to accomplish for him, if not all. When there is a failure of a part of a lawful consideration the part which fails imparts no taint to the residue. In such a case, as no particular amount of consideration is required, the promise may be enforced; if there be left a substantial consideration, it will be sufficient to sustain the contract. (13 C. J. 368 and numerous cases cited.) We think it was a consideration to defendant.

We believe the overwhelming weight of the evidence, much of [5] it undisputed, is against the trial court's finding that there was no consideration. In fact, we do not find in the record any substantial evidence to support the finding. In addition, must be considered section 8431, Revised Codes, 1921: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." It is presumed there was a consideration for the

note in question (*Ford* v. *Drake*, 46 Mont. 316, 127 Pac. 1019; *Dilts* v. *Brooks*, 66 Mont. 346, 213 Pac. 600; *Schauer* v. *Morgan*, 67 Mont. 455, 216 Pac. 347; *Alley* v. *Butte & Western Min. Co.*, 77 Mont. 477, 251 Pac. 517) and the burden of showing a want of consideration to support a written instrument lies with the party seeking to invalidate or avoid it. (Sec. 7513, Rev. Codes, 1921, and cases last cited.) We hold the trial court erred in finding there was no consideration and, hence, in its judgment.

It is evident to us that the note of defendant was intended [6] and understood to be collateral for the old note. Defendant testified: ''This note was given on this other note.'' After the execution of defendant's note, the old note was sent by the bank to a collection agency in California, for the purpose of collecting from Shavey, if possible. He paid thereon $10 and it was credited upon each note. Provin testified he tried to enforce collection against Shavey, ''because that was according to understanding''; that he was to collect from Shavey, if possible, and defendant would have credit on his note for any payment that might be made by Shavey. The holder of a note or security has a right to sue upon it, even if held as collateral to another. (*Gertner* v. *Limon Nat. Bank* — Colo. ——, 257 Pac. 247.)

The views we have announced find support in *Central Bank of Bingham* v. *Perkins*, supra; *Mulaney* v. *Murray*, 68 Mont. 245, 216 Pac. 1105; *In re Stinger's Estate*, 61 Mont. 173, 201 Pac. 693; *Merchants' Nat. Bank of Billings* v. *Smith*, 59 Mont. 280, 15 A. L. R. 430, 196 Pac. 523; *Skagit State Bank* v. *Moody*, 86 Wash. 286, L. R. A. 1916A, 1215, 150 Pac. 425; *Nichols & Sheperd Co.* v. *Dedrick*, 61 Minn. 513, 63 N. W. 1110. Counsel for defendant cite a number of cases in opposition. All have been carefully examined and none are found applicable. Counsel cite authority to show that making a promissory note to a creditor, as collateral to the naked debt of another, ''without any circumstance of advantage to the debtor or disadvantage to the creditor'' is without consideration. That is beside the question. Here, Alcanter, the debtor, certainly obtained an

advantage when he kept his money and departed the state and the bank, the creditor, certainly suffered a disadvantage.

In view of the conclusion, in regard to consideration, which we have reached, it is not necessary to discuss or advert to any of the specifications of error not relating to that issue.

Holding, as we do, that there was a consideration for the note in question, the solution of this case necessarily depends [7] upon a decision of the issue presented by the other defense, delivery on condition not performed. Until there be a decision of that issue, there can be no final decision of the case. Had the trial court decided that issue, we could now review its decision but it did not do so. There is a plain conflict of evidence upon that issue. Not only may different conclusions from the evidence be drawn by different minds but the conflict is sharp and it presents an issue for a trial court. As the trial court did not pass upon that issue, it would not be proper for us to do so. (*Pope* v. *Alexander,* 36 Mont. 90, 92 Pac. 565; *Wertz* v. *Lamb,* 43 Mont. 477, 17 Pac. 89.) Therefore, the cause must be tried again in the district court.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.

Rehearing denied February 6, 1928.