## NELSON, Appellant, v. DAVENPORT et al., Respondents.

(No. 6,485.)

(Submitted September 30, 1929.   Decided October 24, 1929.)

[281 Pac. 537.]

(1)

*Mr. Philip Savaresy* and *Mr. W. L. A. Calder,* for Appellant, submitted an original and a reply brief; *Mr. Calder* argued the cause orally.

*Mr. M. J. Lamb,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action to enjoin the sale of sheep under a chattel mortgage. The complaint alleges that on the ninth day of

April, 1928, plaintiff leased from the defendants Hazel M. Davenport, Erma M. Holland, and George R. Davenport approximately 800 acres of certain described land situated in Yellowstone county; that in payment of the rental plaintiff executed and delivered to Hazel M. Davenport his promissory note in the sum of $550, payable July 1, 1928, and secured by a chattel mortgage on 300 head of breeding ewes and their offspring; that defendants were unable to deliver possession of the lands embraced in the lease and failed and refused to do so, and that thereupon the consideration for the note and mortgage wholly failed; that thereafter, and on the twenty-fourth day of April, 1928, another agreement was entered into between the parties, whereby the lease of April 9 was canceled and abandoned; that defendants, in consideration of the cancellation of the lease of April 9, agreed to satisfy and discharge the chattel mortgage and surrender the note given under the lease, but failed and refused to do so; that a copy of the chattel mortgage was delivered by defendant Hazel M. Davenport to defendant Stone W. Matlock, sheriff of Yellowstone county, who took possession of the sheep under the terms of the mortgage and noticed the same for sale on September 29, 1928. The complaint asks for an order enjoining the sale; it also contains a second cause of action praying for $250 attorney's fees for services in instituting and prosecuting the action, and for $500 damages.

The defendants, by answer, admit the execution of the lease, note, and chattel mortgage of April 9 and that the mortgage has not been satisfied nor the note surrendered; that a copy of the mortgage was placed in the hands of the defendant Matlock, and that he noticed the sheep for sale as alleged in the complaint; and deny the other allegations therein contained. By way of separate defense and counterclaim the answer alleges the execution and delivery of the note and mortgage referred to in the complaint and asks for the foreclosure of the mortgage.

The reply alleges that, since defendants were unable to deliver possession of the lands embraced in the lease of April

9, the consideration for the note and mortgage failed, and that new leases were made canceling and annulling the lease and releasing the plaintiff from liability under the note and mortgage.

The cause was tried to the court sitting with a jury. At the close of all the evidence the court dismissed the jury, made findings of fact and conclusions of law, and entered judgment in favor of defendants. The appeal is from the judgment.

The court found that the lease of April 9 was never canceled or revoked; that the leases of April 24 were never fully executed because there had been no delivery of the same to either plaintiff or defendants; that the instruments were drawn by M. J. Lamb and signed by both parties, but before delivery had been made the plaintiff Nelson "refused to go through with the deal" and announced that he would continue to act under the original lease of April 9. The correctness of these findings is challenged by several of the specifications of error.

The evidence discloses that Hazel M. Davenport and Erma M. Holland are daughters of the defendant George R. Davenport. Erma M. Holland, at the time of the transactions here involved, lived in Chicago, and defendant George R. Davenport had authority to sign her name to leases. The plaintiff's testimony showed that the lease of April 9 was executed, and that plaintiff gave the note and chattel mortgage here involved to defendant Hazel M. Davenport; that about April 23 plaintiff brought his sheep to the land described in the lease and undertook to take possession of the land. He said he met George R. Davenport on the land, and that Davenport said: "It's too bad, I forgot to tell you, you cannot run any sheep here; there is not sufficient water for them. * * * I have got a place down below I will rent to you that has ·water on." He testified that after some discussion it was agreed that the lease of the 9th of April should be canceled and abandoned and new leases drawn; that the next day plaintiff and George R. Davenport went to the office of defendants' attorney, M. J. Lamb, and drew two leases, one was by Hazel M. and George R. Davenport to plaintiff, and the other was

by Hazel M. Davenport to plaintiff and Lee Nelson. These leases covered a portion of the land embraced in the lease of April 9, as well as some additional land; the first of these contained a clause as follows: ''The written agreement entered into between the parties hereto on the 9th day of April, 1928, is hereby canceled.'' It also contained a chattel mortgage clause giving the lessors a lien upon the crops raised, with authority to sell the same in payment of rental in the event of default in such payment. Accompanying the lease was a receipt, signed by the mortgagor, plaintiff herein, acknowledging receipt of a copy of the instrument. Plaintiff also signed both leases, and the one was signed by George R. Davenport.

The evidence introduced by plaintiff also showed that part of the land covered by the lease of April 9 was held by A. L. Reynolds under a prior lease, and that the lessors were unable to deliver possession thereof to plaintiff. After the leases were signed, they were left with M. J. Lamb for the purpose of obtaining the signature of Hazel M. Davenport; later in the day Mr. Lamb obtained the signature of Hazel M. Davenport to both leases. The leases were introduced in evidence and show that Lamb as notary public had placed his notarial seal on the acknowledgment to the lease containing the chattel mortgage but had not signed the same.

Defendant George R. Davenport testified that the leases of April 24 were never delivered to him or to plaintiff; that the next morning after signing the leases he went to the office of Lamb; that the plaintiff, Nelson, was there and told him that he would reject the two agreements made the day before and was going to act under the original lease of April 9; that he discussed with plaintiff his desire to cancel the lease of April 9 because it contained an option to buy the land which he (Davenport) wished to have eliminated. He said that plaintiff and his son went back on their agreement with regard to the delivery of the earlier contract, which, he said, plaintiff agreed to surrender; he stated that the leases of

April 24 were left in the possession of Lamb for the consummation of the agreement.

Mrs. Pauline Frye, a witness for defendants, testified that she had typewritten the leases of April 24; that she had a conversation with plaintiff in the office of attorney Lamb on April 25, and that plaintiff stated he was not "going through with the deal" embraced in the contracts which she had written the day before; that he also said he had the first contract in his possession and refused to go through with the later one, and that "Davenport would be left holding the sack." She also overheard Davenport trying to get Nelson to consummate the deal and settle it.

M. J. Lamb testified that Nelson came to his office on the morning of April 25 and told him he was not going through on this new deal, and asked him not to go any further with the contracts, and that on that account he never signed his name as notary. He reported to Davenport what Nelson had said. He said the contracts were never delivered to either party, that the contracts of April 24 were never consummated, and that, if they had been, he would have signed the one containing the chattel mortgage as notary and filed it in the courthouse.

True, the plaintiff testified that he took possession of the land under the leases of April 24, but as to this the evidence is conflicting. George R. Davenport testified that the Nelson boys moved on to the land on April 22, and that plaintiff came to the land on April 23 and asked for possession of the house, and that the witness advised him to come in, and this even though, as he said, he was not to deliver possession until May 1st.

Under section 7521, Revised Codes 1921, a contract in writing does not take effect until delivery. The execution of an instrument contemplates delivery as well as signing. (Sec. 10581, Id.) A grant takes effect only upon delivery (sec. 6843, Id.), and, under the express provisions of section 7522, Id., the statutory provisions concerning the delivery of grants apply to all written contracts. Whatever the rule may

be in other jurisdictions dispensing with the necessity of delivery of written contracts, in this state delivery of all written contracts is made essential by statute. Whether delivery is complete is largely a question of intention. (*Martin* v. *Flaharty*, 13 Mont. 96, 40 Am. St. Rep. 415, 19 L. R. A. 242, 32 Pac. 287.)

"The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is that act of the grantor, indicated either by acts or words or both, which shows an intention on his part to perfect the transaction, by a surrender of the instrument to the grantee, or to some third person for his use and benefit. The whole object of a delivery is to indicate an intent upon the part of the grantor to give effect to the instrument." (*Thatcher* v. *Wardens etc. of St. Andrew's Church*, 37 Mich. 269.)

The mere signing of a contract does not bind the parties, but there must be a delivery also. (*Ligon* v. *Wharton* (Tex. Civ. App.), 120 S. W. 930; *American Copying Co.* v. *Muleski*, 138 Mo. App. 419, 122 S. W. 384.) And this is true of a lease. (5 Elliott on Contracts, sec. 4538; *Murrell* v. *American Railway Express Co.*, 207 Ky. 322, 269 S. W. 293.)

As evidencing the intention of the parties, the record discloses that the acknowledgment on the one lease was never signed by the notary public; that the lessee, Nelson, never surrendered the lease of April 9, though, according to the testimony on behalf of the defendants, he had agreed to do so, and stated that he had it in his possession. So far as the record discloses, no demand was ever made by plaintiff upon any of the defendants for the surrender of the note and mortgage given under the lease of April 9; on the contrary, according to the evidence introduced by defendants, plaintiff expressly repudiated the purported leases of April 24 and announced his intention to abide and be bound by the lease of April 9, and, according to the undisputed evidence, plaintiff never in fact received a copy of the leases of April 24 and made no demand for a copy thereof, and, according to de-

8

fendants' evidence, expressly directed Lamb not to go any further with the contracts. So far as the record discloses, nothing was said about the consequences in case Hazel M. Davenport refused to sign the leases. Concededly she had not signed them when plaintiff signed the statement acknowledging receipt of a copy of the one containing the chattel mortgage. It was not at that time a completed instrument. Delivery of an uncompleted instrument is ineffective. Mr. Washburn in the sixth edition of his work on Real Property, volume 3, section 2153, says: "But, to have the effect of a delivery, the deed must first have been executed completely; no delivery before that time can give force to the deed."

In *Jordan v. Davis*, 108 Ill. 336, it is said that "delivery is a question of intent, and it depends whether the parties at the time meant it to be a delivery to take effect presently." As was pertinently stated by the court in *Fitzkee v. Hoeflin*, 187 Ill. App. 514: "It is necessary that the instrument should be understood by the parties to be complete and ready for delivery, in order to have a mere placing it in the hands of the grantee construed into a delivery."

The term "delivery" has been held to mean, in legal phraseology, "the final absolute transfer to the grantee of a complete legal instrument sealed by the grantor, covenantor or obligor." (*Black v. Shreve*, 13 N. J. Eq. 455.)

Here the plaintiff never received a copy of the leases of April 24, though he signed a statement acknowledging receipt of one of them. He signed a receipt for a copy before the instrument was completed. Hazel M. Davenport had then not signed it. True she did thereafter sign it, but there is no evidence indicating that there ever was a delivery of the instrument thereafter.

We cannot say that the court under the evidence erred in finding that the leases of April 24 were never fully executed and delivered. It follows, of course, that, if the leases of April 24 never became effective, the lease of April 9, as well as the mortgage and note, were unaffected by them.

There is evidence indicating that defendants were unable to deliver possession of 320 acres of the lands embraced in the lease of April 9 because they were held under a prior lease by A. L. Reynolds. This evidence, however, is not sufficient to support the plea of a total failure of consideration, such as here made. The rule is that the failure of a part of the consideration for a contract, though a ground for rescission (sec. 7565, Rev. Codes 1921), does not support a plea of entire failure of consideration (*Stocks* v. *Scott*, 188 Ill. 266, 58 N. E. 990; *Iowa Nat. Bank of Ottumwa* v. *Sherman*, 23 S. D. 8, 119 N. W. 1010; *Currey* v. *Harden*, 109 Mo. App. 678, 83 S. W. 770; *Sibley & Davis* v. *Rodgers*, 90 Neb. 497, 133 N. W. 1130; *Daniels* v. *Englchart*, 18 Idaho, 548, 39 L. R. A. (n. s.) 938, 111 Pac. 3; *Aegerter* v. *Ronspies*, 97 Nev. 656, 150 N. W. 1019. See, also, *Farmers & Miners' State Bank* v. *Probst*, 81 Mont. 248, 263 Pac. 693). It is worthy of note also that, according to the record, plaintiff shared in the possession of the 320 acres jointly with A. L. Reynolds.

Other questions were raised by the assignment of errors, but we find no merit in them.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.