**UNITED STATES of America,**
**Appellant,**

v.

**George SCHAEFFER, Jr., and Elsie Schaeffer, his wife, et al., Appellees.**

**No. 18291.**

United States Court of Appeals
Ninth Circuit.

July 17, 1963.

Rehearing Denied Oct. 17, 1963.

Ramsey Clark, Asst. Atty. Gen., Brockman Adams, U. S. Atty., Seattle, Wash., Roger P. Marquis, Elizabeth Dudley, Attorneys, Dept. of Justice, Washington, D. C., for petitioner.

Donald M. Bushnell, Ferndale, Wash., for respondent.

Before JERTBERG and BROWNING, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

Appellant brought this action to recover construction and maintenance costs, enforce covenants running with the land, and foreclose liens, pursuant to repayment contracts executed by the appellees or their predecessors in title, in connection with the Lummi Diking Project constructed by the Government pursuant to the Act of March 18, 1926, 44 Stat. 211.[1] The district court entered summary judgment for the appellees, based upon facts admitted in a pretrial order, holding that there was a "fatal want of equity as to the case of the plaintiff, and in particular that any and all rights it may have had * * * were subject to a certain condition precedent and that the same was not fulfilled, and that in no other respects has it any lawful grounds of recovery * * * or does it have or possess any lawful lien * * *". The United States has appealed from the summary judgment.

The purpose of the Lummi Diking Project was to construct dikes for the protection of lands within the Lummi Indian Reservation and those in private ownership adjoining the reservation on the east, including the lands here involved, from the overflow of fresh water at flood stages from the Nooksack River, the eastern boundary of the project lands, and the overflow by salt water tides from the Lummi River on the southwest side of the reservation.

All of the appellees executed repayment contracts in which they agree "to and with the Secretary of the Interior and with all other landowners whose lands may be included within the project, in consideration of the premises, the promises of said other landowners, and the work to be done by the United States in connection with the project, that if the Secretary * * * shall construct dikes for the purpose contemplated in the Act", their lands "shall at once be and become burdened with and subject to a first lien" to secure "the full payment of a pro rata share of the entire cost of said project and all of the betterment, operation and maintenance charges, and penalties in connection therewith; * * *".[2]

---

1. The Act authorized an appropriation "for reclaiming by construction of dikes approximately four thousand acres of lands in Indian and private ownership within and immediately adjacent to the Lummi Indian Reservation, in the State of Washington: *Provided*, That the total cost of the project shall be distributed equitably among the lands in Indian ownership and the lands in private ownership that may be benefited in accordance with the benefits received as designated by the Secretary of the Interior." It provided for the reimbursement of construction charges assessable against the Indian lands and for a lien against such lands. With respect to lands in private ownership, it provided:

"Sec. 3. No part of the sum provided for herein shall be expended for construction on account of any lands in private ownership until an appropriate repayment contract in accordance with the terms of this Act and in form approved by the Secretary of the Interior shall have been properly executed by the landowners whose lands may be benefited by the project."

The Secretary of the Interior was "authorized and directed to declare by public notice the cost of the project and the equitable share to be assessed against the lands benefited in accordance with their respective benefits", the costs to be repaid in annual installments as set forth in the Act.

2. The major portion of the project lands was in Indian ownership. Upon solicitation of the Secretary, through his agents,

Prior to the execution of the contracts, the appellees or their predecessors in title were notified that the Secretary of the Interior had determined the identity and area of the lands to be benefited. He had divided the lands into four classes, according to the relative benefits. Appellees' lands were in Class I, were not affected by the salt water tides, and the construction charge was fixed at $8.00 per acre.

Before commencing construction, the Secretary's agents obtained repayment contracts from all except one of the owners of private lands *outside* the reservation in the same area with appellees. The owners of the other lands outside the reservation executed a supplemental agreement under which they agreed to assume their respective shares of the cost assessable against the nonsigning owner.

The Secretary proceeded to construct the dikes and expend the funds appropriated by Congress without procuring the execution of repayment contracts from the owners of seven tracts of land in private ownership located *inside* the reservation. This court held in Hood v. United States, 9 Cir., 1958, 256 F.2d 522, that there was no lien upon those tracts, that they were improperly included by the Secretary in the schedule of charges allocating pro rata costs of construction, and that there was no basis for the imposition of any charge for operation and maintenance. The title of the landowners was quieted against the claims of the Government.

On August 9, 1930, after construction was completed, the Secretary issued the "public notice" required by the Act, fixing the construction costs assessed against each acre in the project, and payment terms. 25 CFR (1949 ed) § 144.

This notice included the names and lands of the seven nonsigning owners within the reservation. Prior to the final determination of Hood v. United States, supra, the Secretary claimed and asserted that the Government had valid liens against those lands.

There has been no change in the allocation of construction costs among appellees by reason of the determination that the Government has no lien or claim against the lands of the seven nonsigning owners. Appellees do not dispute the distribution of the construction costs, but do dispute their validity.

Since the completion of the construction, assessments have been made against the owners of all lands for the cost of operation and maintenance on a pro rata basis.[3] Prior to the decision in the Hood case, the Government claimed a lien for maintenance and operation charges against all lands in private ownership, including the lands of nonsigners.

Appellees and their predecessors in title have made some payments on both construction charges and operation and maintenance charges, but have refused and neglected to make others.

Three questions are presented:

1. Whether the rights of the United States were subject to a condition precedent which had not been fulfilled, because the seven landowners did not execute similar contracts.

2. Whether the United States has a lien on the properties of appellees in view of the contract provision that if the Secretary of the Interior shall construct the dikes for the purpose contemplated in the Act, the lands shall at once become burdened with and subject to a first lien.

---

instruments substantially identical to those executed by appellees were executed by 49 of 62 Indian owners and by "various other owners of private lands within reservation boundaries". The lands in Indian ownership and other lands inside the reservation are not involved in this action.

3. While construction costs were classified on the basis of varying benefits, operation and maintenance charges were assessed on a flat per acre basis. Appellees contended that the flat charges were excessive and were not the "equitable charges" required by the instruments they executed. This issue was not determined in view of the trial court's conclusion as a matter of law that the Government had no valid lien for either construction charges or operation and maintenance charges.

3. Whether under the admitted facts there is a fatal want of equity to justify the position of the claimed liens because of lack by appellant of fair dealing with appellees, and impossibility of enforcing the alleged contracts without, in effect, writing new contracts and imposing inequitable burdens.

Appellees contend that the execution of the repayment contracts by *all* private landowners within the project was a condition precedent, that the dikes accordingly were constructed in violation of law, and that appellees are not obligated under their contracts to pay the delinquent assessments for either construction or maintenance. Appellant contends that obtaining repayment contracts from all of the private landowners was not a condition precedent to the validity of the contracts with appellees, and the fact that a few landowners did not execute contracts was at most a partial failure of consideration which would not terminate the contracts.

A condition precedent is "a fact (other than mere lapse of time) which * * * must exist or occur before a duty of immediate performance of a promise arises, * * *". Restatement of the Law, Contracts § 250. Williston defines a condition precedent as "a fact or event which the parties intend must exist or take place before there is a right to performance". 5 Williston on Contracts 3d ed., 126–127, § 663, quoting from Lach v. Cahill, 138 Conn. 418, 85 A. 2d 481.

"No particular form of words is necessary in order to create an express condition. Whether a promise is expressly conditional, and if so what is the nature of the condition, depend upon interpretation." Restatement, supra, § 258. The intent of the parties must be ascertained from a fair and reasonable construction of the language of the contract in the light of the surrounding facts and circumstances.[4] Conditions precedent are not favored and the courts will not construe stipulations as conditions unless required to do so by plain, unambiguous language.[5]

Williston distinguishes between a condition and a promise and the respective consequences of their breach. A condition creates no right or duty of and in itself, but is merely a limiting or modifying factor. If it is breached or does not occur, the promisee acquires no right to enforce the promise. A promise raises a duty to perform and its breach subjects the promisor to liability and damages, but does not necessarily excuse performance by the other party. 5 Williston, supra, §§ 663 and 665.

A partial failure of consideration does not excuse performance by the other party to a contract or give him a right of rescission. Such failure is merely ground for abatement of damages unless it goes to the root of the contract.[6] Moreover, "If one of two considerations for a contract is insufficient, but not illegal, the other, if sufficient, will support the contract. Similarly, although part of the consideration is insufficient consideration, a contract may be supported by the residue of the consideration if good per se." 12 Am.Jur. 612, Contracts § 118.[7]

4. See 17A C.J.S. Contracts § 338, pp. 318–323; 12 Am.Jur. 848, 849, Contracts §§ 295, 296; 5 Williston, supra, § 663; Partlow v. Mathews, Wash. en Banc, 1953, 43 Wash.2d 398, 261 P.2d 394, 398.

5. See 5 Williston, supra, § 665; 17A C.J.S. Contracts § 338, p. 322, supra; Superior Portland Cement v. Pacific Coast Cement Co., 1949, 33 Wash.2d 169, 205 P.2d 597, 616; Fischler v. Nicklin, 1958, 51 Wash. 2d 518, 319 P.2d 1098, 1101; Kasishke v. Baker, 10 Cir. 1944, 146 F.2d 113, 115.

6. See 12 Am.Jur. 927, Contracts § 360; 17 C.J.S. Contracts § 130, pp. 851, 852;

Colonial Insurance Company v. Graw, 1955, 102 Ohio App. 430, 129 N.E.2d 491, 496; Neely v. White, 1941, 177 Va. 358, 14 S.E.2d 337, 340–341; King v. Moreland, 1931, 116 Cal.App. 356, 2 P.2d 576; Farmers' and Miners' State Bank v. Probst, 1928, 81 Mont. 248, 263 P. 693, 697.

7. This rule was quoted with approval in Luther v. National Bank of Commerce, 1940, 2 Wash.2d 470, 98 P.2d 667, 673. See also Restatement, supra, § 84(b).

There is little or no disagreement with respect to these rules. The parties are in conflict as to which are applicable here. This must be resolved by interpretation of the contract and the Act of Congress under which it was made. The contract, inter alia, restates the provision of section 3 of the Act (see note 1, supra) and continues in pertinent part: "* * * * *the said undersigned owner of the lands aforesaid covenants, promises, and agrees to and with the Secretary of the Interior and with all other landowners whose lands may be included within the project, in consideration of the premises, the promises of said other landowners, and the work to be done by the United States in connection with the project, that if the Secretary of the Interior shall construct dikes for the purpose contemplated in the Act, said lands shall at once be and become burdened with and subject to a first lien, so far as this agreement can make the same a first lien, to secure to the United States the full payment of a pro rata share of the entire cost of said project and all of the betterment, operation, and maintenance charges, and penalties in connection therewith; * * *." (Emphasis supplied.)

■ The italicized portion of the contract does not contain words of condition with respect to the "other landowners whose lands may be included within the project", but clearly includes "the promises of said other landowners" as a part of the consideration for the contract. As to that portion of the contract, the failure of other landowners to sign repayment contracts is an insubstantial failure of consideration. Obviously the primary and fundamental consideration for the liens and promises to repay is "the work to be done by the United States in connection with the project * * *".

■ As for the remaining portions of the contract set forth, it must be conceded that these, and section 3 of the Act, contain words of condition. Appellees fail to distinguish, however, between conditions contained in the Act and the contracts which benefit the United States, and conditions which would enure to their own benefit. We think it manifest that the condition stated is solely for the benefit of the United States.

A party may waive a condition inserted in a contract for his own benefit. In Stewart v. Griffith, 1910, 217 U.S. 323, 30 S.Ct. 528, 54 L.Ed. 782, a vendor was held entitled to specific performance under a real estate contract. A condition of the contract required payment of a certain sum by the vendee upon a certain date or the contract was to be forfeited and the conveyance thereunder rendered null and void. The court said: "The condition plainly is for the benefit of the vendor and hardly less plainly for his benefit alone, * * *. This being so, the word void means voidable at the vendor's election and the condition may be insisted upon or waived at his choice." 217 U.S. at 329, 30 S.Ct. at 529.

The appellees' primary purpose in executing the contracts was to obtain the reclamation of their lands through federal construction of dikes. It was necessary to agree to repay a proportionate share of the cost of construction and to give the United States a lien upon their lands to secure payment. We think it clear that appellees were bargaining for the construction of dikes—not for the execution of repayment contracts by other landowners. The latter would be material only if the failure of other landowners to execute agreements would increase the cost of construction to be borne by those who did. No contention is made that appellees' costs of construction were thereby increased. The condition which existed was not to assure unanimity of obligation but to assure that the United States would be repaid for sums expended in construction of the project.

■ Having determined that obtaining repayment contracts from all of the private landowners was not a condition precedent to the validity of the contracts with appellees, it follows that under the Act and contracts the United States has an enforceable lien against the properties of appellees. See Walker v. Brown, 1897, 165 U.S. 654, 664, 17 S.Ct. 453, 41

L.Ed. 865, 871; United States v. Butterworth-Judson Corp., 1925, 267 U.S. 387, 393, 45 S.Ct. 338, 69 L.Ed. 672.

In support of their reliance upon a "want of equity" on the part of the United States, appellees contend that the Act itself, and particularly the recitals in the contracts, amount to a representation, upon which appellees must have relied, that the project would not be constructed unless all landowners whose lands would be thereby affected signed repayment contracts. But this is no more than a restatement of the contention that appellees signed the contracts and agreed to perform thereunder only on condition that everyone whose lands were affected sign a repayment contract. As noted supra, the court finds no condition precedent manifested by the contracts or in the circumstances surrounding their execution.

Appellees argue further that there can be no assurance that the operation and maintenance charges will be "equitably distributed", as required by the contracts, if some of the landowners are exempt from their payment. Questions relating to the "proper measure" of charges for operation and maintenance are included in the issues of fact and law in the pretrial order. We do not presume to pass upon these questions at this time, except to make it clear that operation and maintenance expense chargeable to appellees may not be increased by reason of the failure of appellant to obtain repayment contracts from the nonsigning owners.

 Appellees contend finally that the enforcement of the contracts against appellees would constitute a judicial sanction of the unlawful acts of appellant's agents. It is true that this court noted in Hood v. United States, supra, that the Secretary of the Interior violated the Act of Congress "by failing to obtain repayment contracts from the owners of private lands benefited by the improvement before the expenditure of any money of the appropriation for the construction" of the dikes. Accordingly it was held that, "There was thus no lien

upon any of these lands" (referring to the seven tracts owned by nonsigners). This decision may not be extended to those lands where the owners did in fact execute repayment contracts pursuant to the Act. The mere fact that some landowners failed to sign contracts and agents of appellant violated the law in proceeding with construction in the absence of these contracts, does not preclude appellant from collecting from those landowners who did sign contracts, provided their obligation is in no way increased by the failure to obtain contracts from the nonsigners. The condition that all landowners execute contracts was for the benefit of the United States and could be waived by it through performance of its part of the obligation.

It follows that the judgment must be reversed and the cause remanded for further proceedings consistent with this opinion.